HAZEL LYNCH WILLIAMSON, as Next Friend of DAVID ROBERT WILLIAMSON, and HAZEL LYNCH WILLIAMSON; individually, and EARL WILLIAMSON, Plaintiffs Below, Appellants, v. THE WILMINGTON HOUSING AUTHORITY, a corporate body organized and existing pursuant to Chapter 160, Revised Code of Delaware, 1935, and the PENNSYLVANIA RAILROAD COMPANY, a corporation of the Commonwealth of Pennsylvania, Defendants Below, Appellees.

(*March* 11, 1965)

WOLCOTT C. J., and CAREY and HERRMANN, JJ., sitting.

*Vincent A. Theisen* and *Victor F. Bataglia,* of Theisen and Lank, for plaintiffs.

*William F. Taylor,* of Morford, Young and Conaway, for defendant Wilmington Housing Authority.

Supreme Court of the State of Delaware, No. 71,1964.

HERRMANN, Justice.

This is a negligence case brought against The Wilmington Housing Authority and the Pennsylvania Railroad Company for the personal injuries sustained by David Robert Williamson, a minor. The plaintiffs are the parents of David, suing on his behalf and their own. The Housing Authority moved for summary judgment. The Railroad Company did not. The trial court granted the summary judgment and the plaintiffs appeal.

The question before us is the usual one when summary judgment has been granted in favor of the defendant in a negligence case: Has the defendant discharged its burden to demonstrate, to a reasonable certitude, that there is no issue of fact which, resolved in favor of the plaintiffs, would hold the defendant liable to the plaintiffs on the claim? *Howard v. Food Fair Stores, New Castle, Inc.,* Del., 201 A.2d 638 (1964); *Ebersole v. Lowengrub,* 4 Storey 463, 180 A.2d 467 (1962).

The uncontroverted facts are as follows:

The Authority owns and operates a low cost rental housing facility in Wilmington known as the Southbridge Development. It consists of simgle, row-type houses. In October 1959, David and his family moved into a house in the Development rented by his mother. They were obliged to take the house assigned to them and had no choice in the selection. The house was located near the southerly edge of the Development which abutted an embankment owned by the defendant Railroad Company. Tracks of the Railroad Company were located at the foot of the embankment. The rear of the house was approximately 60 feet from the top of the embankment, being separated therefrom by a backyard, an automobile driveway and an open area frequently used as a children's play area.

The embankment has an elevation of 100.2 feet at the top and drops to 90.2 feet at the railroad track level below. The property line between the lands of the Authority and the Railroad Company runs,

generally speaking, along the top of the embankment. A path extends down the embankment from a point at the top, located approximately 5 feet within the Authority's property line and adjoining the play area, to a point at the railroad level approximately 50 feet below. The path thus leading from within the Authority's property, down the embankment and across the railroad tracks, is used by residents of the Development as a shortcut to South Heald Street nearby.

The Authority's property is separated from the embankment and the rest ot the railroad property by a screen of hedges approximately 6 feet high and bushes approximately 2 feet to 4 feet high, running generally and almost continuously along the property line. However, the top of the path, located on the Authority's property, creates an opening in the screen formed by these plantings. There was no fence across the path. The Authority reserved control of the walks, drives and community spaces between the house and the railroad property.

On April 4, 1960, David was in the play area. He was four at the time. He had often played there with other children. A train was passing at the bottom of the embankment. David was attracted by the train and ran to the top of the path to see the trian and to wave to train personnel. He slipped and fell down the path and embankment and rolled onto the tracks and under the moving train. He suffered the loss of his right arm and foot.

The key question is whether the Authority permitted a dangerous condition to exist on its premises. The issue is clearly drawn by the parties. The plaintiffs contend that the top portion of the path, located within the Authority's property, constituted a dangerous condition existing on the Authority's land insofar as David is concerned, when viewed in conjunction with the adjoining play area, the embankment, the attraction of the passing trains below, the invitation of the opening in the screen of hedges and shrubbery, created by and for the path, and other attendant circumstances. The plaintiffs contend that the Authority owed a duty to David, under the circumstances, to erect a fence or other protective device to protect

him from the dangerous condition thus created. The Authority, on the other hand, says no dangerous condition existed on its property as to which it owed any duty to David; that the dangerous condition was entirely outside the Authority's property. It argues that it had no duty to erect a fence to protect David against a dangerous condition existing entirely outside its premises.

The question of what constitutes a dangerous condition in a situation of this kind cannot be settled by any formula or hard and fast rule. The existence or nonexistence of a dangerous condition must depend upon the fact and circumstnaces of each case and is generally a question of fact for the jury to determine except in very clear cases. *Harper v. Vallejo Housing Authority,* 104 Cal. App. 2d 621, 232 P. 2d 262 (1951). This is not such a case.

We think that the question of whether, under the facts of this case, a dangerous condition was permitted to exist on the Authority's property, is clearly a question to be determined by the jury. The liability of the Authority depends, in large measure, upon the resolution of that question and we think it can be reasonably answered either way. Compare *Herdt v. Koenig,* 137 Mo.App. 589, 119 S.W. 56 (1909). Since we cannot agree that the answer to that question must necessarily be in favor of the Authority, we conclude that the entry of summary judgment in its favor was error.

We take note of the Authority's reliance upon *Villani v. Wilmington Housing Authority,* 9 Terry 450, 106 A.2d 211 (1954) and *Jones v. United States,* (4 Cir., 1957) 241 F.2d 26. Neither of the cited cases solves the problem. In the Villani case, the dangerous condition was a stream of water located on land owned by another approximately a quarter of a mile away from the home of the minor. The court there held that the homeowner had no duty to enclose the residence with a fence to protect the minor against a dangerous condition existing entirely on other property. Similarly, in the Jones case, the dangerous condition, consisting of nearby railroad tracks, was entirely outside the housing project in which the minor plaintiff resided. The court there held that the Housing Administration had no duty to erect a barricade

to protect the minor against the dangerous condition existing entirely on adjoining property. The important difference in the instant case is that there is evidence in this record from which a jury reasonably could conclude that the initial portion of the dangerous condition was located on the Authority's property.

Accordingly, the judgment below is reversed and the cause remanded for further proceedings.