MCKINNEY, A MINOR, ET AL., APPELLANTS, *v.* HARTZ & RESTLE REALTORS, INC. ET AL., APPELLEES.

[Cite as McKinney v. Hartz & Restle Realtors, Inc. (1987), 31 Ohio St. 3d 244.]

(No. 86-1213—Decided July 15, 1987.)

*Gustin & Lawrence Co., L.P.A.,* and *R. Lanahan Goodman,* for appellants.

*Lindhorst & Dreidame Co., L.P.A., Thomas M. Tepe* and *Mark A. MacDonald,* for appellee Hartz & Restle Realtors, Inc.

*Dinsmore & Shohl, Gary D. Bullock* and *Julie Furber Bissinger,* for appellee Consolidated Rail Corporation.

WRIGHT, J. In considering the propriety of the trial court's grant of summary judgment to H&R and Conrail, we are mindful that Civ. R. 56(C) requires that "summary judgment shall not be rendered unless it appears

from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *." Consequently, in reviewing a motion for summary judgment, the court must construe the evidence in the light most favorable to the opposing party. See *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267; *Wills* v. *Frank Hoover Supply* (1986), 26 Ohio St. 3d 186, 26 OBR 160, 497 N.E. 2d 1118.

One of the factors necessary to establish an actionable cause of negligence is a breach by defendant of a duty of care owed to plaintiff. *Mitchell* v. *Cleveland Elec. Illum. Co.* (1987), 30 Ohio St. 3d 92, 30 OBR 295, 507 N.E. 2d 352; *Wills* v. *Frank Hoover Supply, supra.* We find that the trial court did not err in holding that neither H&R nor Conrail breached any duty of care owed to plaintiff. Therefore, we affirm the decision of the court of appeals which upheld the trial court's grant of summary judgment in favor of H&R and Conrail.

## I

A trespasser is one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience. See *Allstate Fire Ins. Co.* v. *Singler* (1968), 14 Ohio St. 2d 27, 29, 43 O.O. 2d 43, 44, 236 N.E. 2d 79, 81. Michael's unfortunate venture onto Conrail's property was without invitation or permission. Thus, he was a trespasser on Conrail's property, and Conrail owed him only the duty of care due to trespassers.

"Ordinarily, a landowner owes no duty to undiscovered trespassers other than to refrain from injuring such trespassers by willful or wanton conduct." *Elliott* v. *Nagy* (1986), 22 Ohio St. 3d 58, 60, 22 OBR 77, 78, 488 N.E. 2d 853, 854; *Brooks* v. *Norfolk & Western Ry. Co.* (1976), 45 Ohio St. 2d 34, 74 O.O. 2d 53, 340 N.E. 2d 392; see, also, Prosser & Keeton, Torts (5 Ed. 1984) 397, Section 58. Willful conduct "involves an intent, purpose or design to injure." *Denzer* v. *Terpstra* (1934), 129 Ohio St. 1, 1 O.O. 303, 193 N.E. 647, paragraph two of the syllabus; see, also, *Reserve Trucking Co.* v. *Fairchild* (1934), 128 Ohio St. 519, 191 N.E. 745; *Motorists Mut. Ins. Co.* v. *Bill* (1978), 56 Ohio St. 2d 258, 266, 10 O.O. 3d 398, 402, 383 N.E. 2d 880, 884. Wanton conduct occurs when one "fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result * * *." *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114, 4 O.O. 3d 243, 363 N.E. 2d 367, syllabus; *Brooks* v. *Norfolk & Western Ry. Co., supra.*

A railroad has no statutory or common-law duty to fence its right-of-way against trespassers. *Brooks* v. *Norfolk & Western Ry. Co., supra,* at 38, 74 O.O. 2d at 55, 340 N.E. 2d at 394; *Lake Shore & Michigan So. Ry. Co.* v. *Liidtke* (1904), 69 Ohio St. 384, 69 N.E. 653. Similarly, Conrail had

no duty to provide watchmen or other personnel to prevent trespass. *Brooks* v. *Norfolk & Western Ry. Co., supra.* Consequently, since a railroad has no duty to fence its right-of-way to prevent trespass on its tracks, the lack of fences along Conrail's right-of-way does not constitute negligence, much less wanton or willful misconduct.

The trial court held that there was no evidence suggesting that Conrail breached its duty not to engage in willful or wanton misconduct. We agree with the court of appeals that appellants have presented no evidence to support a finding that this decision was in error. Appellants do not suggest that Conrail had the intent, purpose, or design to injure Michael; thus, Conrail's conduct could not have been willful. There was also no evidence that the train was traveling at an improper speed or that Conrail otherwise engaged in wanton misconduct. The mere fact that the crew did not see Michael, who was apparently standing near, but not on, the track upon which the Conrail train was traveling, is not sufficient, standing alone, to constitute wanton misconduct.

## II

Appellants assert that the attractive nuisance or dangerous active operations doctrines imposed a higher duty of care on Conrail. Ohio has not adopted the doctrine of attractive nuisance. See *Elliott* v. *Nagy, supra,* at 60, 22 OBR at 78, 488 N.E. 2d at 855. Furthermore, "[t]he overwhelming weight of authority in jurisdictions [which have adopted the attractive nuisance doctrine] * * * is that the attractive nuisance exception does not apply as a matter of law in cases where child trespassers are injured by moving trains" because a moving train is not a subtle or hidden danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children. *Holland* v. *Baltimore & Ohio RR. Co.* (D.C. App. 1981), 431 A. 2d 597, 602 (en banc); see, also, Annotation (1971), 35 A.L.R. 3d 9; *Alston* v. *Baltimore & Ohio RR. Co.* (D.D.C. 1977), 433 F. Supp. 553; *Gutirrez* v. *Southern Pacific Co.* (1959), 174 Cal. App. 2d 866, 345 P. 2d 326; *Seiferth* v. *St. Louis Southwestern Ry. Co.* (C.A. 7, 1966), 368 F. 2d 153; *Nolley* v. *Chicago, M., St. P. & P. RR. Co.* (C.A. 8, 1950), 183 F. 2d 566; *Smith* v. *Illinois Cent. RR. Co.* (1952), 214 Miss. 293, 58 So. 2d 812. Consequently, we decline to reconsider the doctrine of attractive nuisance in this cause.

Similarly, the dangerous instrumentality exception is not applicable. The dangerous instrumentality exception imposes upon the owner or occupier of a premises a higher duty of care to a child trespasser when such owner or occupier actively and negligently operates hazardous machinery or other apparatus, the dangerousness of which is not readily apparent to children. See *Coy* v. *Columbus, Delaware & Marion Elec. Co.* (1932), 125 Ohio St. 283, 181 N.E. 131; *Wills* v. *Frank Hoover Supply, supra.* As discussed above, a moving freight train is not a hidden danger. "Nothing could be more pregnant with warning of danger than the noise and ap-

pearance of a huge, rumbling, string of railroad cars. It cannot be compared with the silent, deadly danger of high-power electricity, [or] the inanimate attraction of stationary machines * * *." *Herrera* v. *Southern Pacific Ry. Co.* (1961), 188 Cal. App. 2d 441, 449, 10 Cal. Rptr. 575, 580; *Holland* v. *Baltimore & Ohio RR. Co., supra,* at 603. Thus, a train is an open and obvious danger to which this exception cannot be applied.

## III

The duties imposed on a landlord at common law derived from possession and control over that portion of the property containing the alleged hazard. See *Grieser* v. *Huntington Natl. Bank* (1964), 176 Ohio St. 291, 27 O.O. 2d 202, 199 N.E. 2d 556. Additional duties were imposed by the Landlord and Tenant Act which provides at R.C. 5321.04(A) that "[a] landlord who is a party to a rental agreement shall: * * * (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in fit and habitable condition * * *." These specific duties imposed by R.C. 5321.04 make the landlord "* * * liable for injuries, sustained on the demised residential premises, which are proximately caused by the landlord's failure to fulfill the duties imposed by R.C. 5321.04." *Shroades* v. *Rental Homes, Inc.* (1981), 68 Ohio St. 2d 20, 22 O.O. 3d 152, 457 N.E. 2d 774, syllabus; see, also, *Anderson* v. *Ceccardi* (1983), 6 Ohio St. 3d 110, 6 OBR 170, 451 N.E. 2d 780.

Appellants contend that H&R had a duty to fence the portion of its property that abutted the railroad right-of-way or to otherwise prevent tenants from using the paths through the underbrush adjacent to its property, and that, as a result of its failure to perform this alleged duty, the common areas of the premises were not kept in a safe condition in violation of R.C. 5321.04(A). The *Shroades* and *Anderson* decisions address a landlord's liability for tenant's injuries occurring on the rental premises and, thus, they differ from the cause at issue in which the injuries occurred off the landlord's premises. We have generally refused to extend the requisite duty of care to protect against conditions existing beyond the territorial limits of the defendant's property, see *Mitchell* v. *Cleveland Elec. Illum. Co., supra,* at paragraph one of the syllabus; *Ruwe* v. *Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St. 3d 59, 29 OBR 441, 505 N.E. 2d 957, and we decline to extend such a duty in these circumstances.[1]

Courts in other jurisdictions have uniformly held that a landlord is not required to fence property simply because it abuts railroad tracks. In *Jones* v. *United States* (C.A. 4, 1957), 241 F. 2d 26, a case in which a small child was struck by a train on tracks abutting the apartment complex in which he resided, the court held that the statute requiring landlords to correct conditions hazardous to health and safety could not be extended to require the landlord to fence property abutting a railroad right-of-way. The

---

[1] H&R's relationship with Michael was solely that of landlord and tenant. There are no allegations that H&R was serving *in loco parentis* or in a similar capacity towards Michael.

court noted that "[t]o hold otherwise would make it incumbent upon landlords to erect fences around all projects, as it is just as reasonable to assume that a small child would dart out into a main highway adjacent to a project and sustain comparable injuries or death." *Id.*

Pennsylvania courts have refused to impose a duty on a landowner to fence property adjacent to railroad tracks to protect children who live or play on the land. The courts in Pennsylvania noted, as in Ohio, that a railroad has no duty to fence its right-of-way, and consequently "it would be incongruous to impose such a duty upon adjacent landowners when no such duty is imposed upon the owner of the land in which the dangerous condition exists." *Scarborough* v. *Lewis* (Pa. Super. 1986), 518 A. 2d 563, 567; *Cousins* v. *Yaeger* (E.D. Pa. 1975), 394 F. Supp. 595, 605.

In the cause at issue, as in the *Jones, Cousins* and *Scarborough* cases, there were no allegations of any dangerous conditions on the landowner's property which proximately caused the child's injuries. In *Williamson* v. *Wilmington Housing Auth.* (1965), 58 Del. 252, 208 A. 2d 304, a young child fell down a steep, slippery path between the apartment complex in which he lived and the adjacent train tracks and was injured by a passing train. The Delaware Supreme Court held that a jury could find that the path itself, part of which was located on the landlord's property, was a dangerous condition and, therefore, the landlord could be held liable for the child's injuries even though they occurred on adjacent property. See, also, *Wilmington Housing Auth.* v. *Williamson* (Del. 1967), 228 A. 2d 782, on remand. The court distinguished the case from *Jones,* stating: "[t]he important difference in the instant case is that there is evidence in this record from which a jury reasonably could conclude that the initial portion of the dangerous condition was located on the [landlord's] property." *Williamson, supra,* 58 Del. at 256, 208 A. 2d at 306. Thus, *Williamson* is not applicable to the cause at issue since appellants do not contend that the path was in and of itself dangerous.

A moving freight train, like any other moving vehicle, is dangerous only if one gets in its path or attempts to board while it is moving. This danger is open, obvious, and common to all. See *Jones* v. *United States* (C.A. 4, 1957), 241 F. 2d 26. Thus, the type and level of dangerousness of a railroad right-of-way is comparable to that of a road or street. No common-law provision or Ohio statute imposes a duty on a landlord to fence rental property to protect tenants from traffic on adjacent streets or roads. We do not believe that any additional duty should be placed on a landlord whose property abuts a railroad right-of-way than on one whose property is adjacent to a street or road. Therefore, we hold that, generally, a landlord has no duty to erect a fence between its rental property and a railroad right-of-way.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES and H. BROWN, JJ., concur.

LOCHER, J., concurs in judgment only.

SWEENEY and DOUGLAS, JJ., dissent.

SWEENEY, J., dissenting. In my opinion, the instant cause presents genuine issues of material fact as to whether the landlord's failure to protect the children of the apartment complex against the abutting railroad tracks was a breach of its duty of ordinary care. Therefore, I must dissent from the majority's judgment precluding plaintiffs from having their day in court.

As noted by Judge Black's dissenting opinion in the court of appeals below, two issues are in dispute and should be resolved by the trial court: (1) whether the landlord breached a duty of ordinary care to keep the outside common areas of the apartment complex in a reasonably safe condition, and (2) whether the breach was a proximate cause of the minor's injuries. When one construes the evidence most strongly in plaintiffs' favor, as required by Civ. R. 56(C), I believe that there is a legitimate dispute over whether the landlord's purported breach of duty was a proximate cause of the minor's injuries.

As the record indicates, the landlord instructed the children residing in the complex to play only in the back area of the property near the railroad tracks where the complex playground was situated. In my view, the landlord knew or should have known about the existence of the well-worn paths leading from the playground area to the railroad tracks; and, apparently, the landlord did nothing to prevent children living in the complex from wandering down those well-worn paths to the railroad tracks. Unlike the majority, I am unwilling to endorse a *per se* rule that a landlord is blameless, as a matter of law, for failing to protect tenants from dangers that exist outside the landlord's property boundaries. As Judge Black stated in his well-reasoned opinion below:

"The fact that the danger lay off the landlords' premises does not automatically relieve them of their duty of ordinary care. The extent of that duty is a matter of proximity and foreseeability. If the landlords had allowed a well to remain uncapped within the play area where one hundred children were present, there is no doubt this would be a breach of ordinary care. If that uncapped well were located just across the property line on an adjoining neighbor's premises, at the bottom of a slippery slope that started in the play area, as in the Delaware case [*Williamson* v. *Wilmington Housing Auth.* (1965), 58 Del. 252, 208 A. 2d 304] involving the Williamson four-year-old, that failure to provide reasonable protection could be found to be a failure of ordinary care. Take the hazardous condition further away, perhaps ten city blocks, attenuating the immediacy of the danger, and the landlords could not reasonably be held to a duty to

provide protection against that remote hazard. It all depends on the facts and circumstances. See, generally, Annotation, Landlord's Liability for Injury or Death Due to Defects in Outside Walks, Drives or Grounds Used in Common by Tenants (1976), 68 A.L.R. 3d 382.''

Unfortunately, the majority in the instant cause mechanically applies herein the same type of ill-conceived rule that was promulgated in *Mitchell* v. *Cleveland Elec. Illum. Co.* (1987), 30 Ohio St. 3d 92, 30 OBR 295, 507 N.E. 2d 352, whereby a city (as in the *Mitchell* case) or a landlord (as in the cause *sub judice*) may blithely ignore any danger that exists outside its territorial limits, given the fact that this court holds as a matter of law that such entities or persons owe no duty to warn or protect their taxpayers or tenants from such dangers, regardless of whether the city or landlord has knowledge of such danger. Once again, it must be emphasized that whether a duty should or should not be imposed depends largely on the facts and circumstances of each case. Based on the analysis set forth in my dissenting opinion in *Mitchell, supra,* I reject the majority's rationale, and would reverse the court of appeals' decision and find, with respect to plaintiffs' claim against the landlord, that there remain genuine issues of material fact to be decided by the trier-of-fact.

In addition, I must dissent from this court's refusal to adopt the "attractive nuisance" doctrine embodied in Section 339 of the Restatement of the Law 2d, Torts (1965) 197. For the reasons set forth in my dissenting opinion in *Elliott* v. *Nagy* (1986), 22 Ohio St. 3d 58, 62, 22 OBR 77, 79, 488 N.E. 2d 853, 856, and in my concurring opinion in *Wills* v. *Frank Hoover Supply* (1986), 26 Ohio St. 3d 186, 192, 26 OBR 160, 164, 497 N.E. 2d 1118, 1123, I believe that this standard, which is the standard adopted by the overwhelming majority of jurisdictions throughout the country, is the most fair in determining liability in the type of situation presented herein.

Therefore, I would reverse the judgment of the court of appeals and remand the cause for a trial on the merits.

DOUGLAS, J., concurs in the foregoing dissenting opinion.