**Delphine BROWN, Plaintiff,**

v.

**The BALTIMORE & OHIO RAILROAD COMPANY, et al., Defendants.**

**No. C–1–90–824.**

United States District Court,
S.D. Ohio, W.D.

Aug. 21, 1992.

Dexter Arthur Rabourn, Waite, Schneider, Bayless & Chesley Co., Cincinnati, OH, for plaintiff.

James Lacey O'Connell, Lindhorst & Dreidame Co., Cincinnati, OH, for defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on the Defendant CSX Transportation Corporation's ("CSX") motion for summary judgment (doc. 6), the Plaintiff's response (doc. 14), the Defendant's reply (doc. 24), the Plaintiff's reply memorandum (doc. 25), and the Plaintiff's supplemental memorandum (doc. 28). For the reasons set forth below, the Defendant's motion for summary judgment is hereby denied.

## STATUS OF DEFENDANT BALTIMORE & OHIO RAILROAD

In her initial Complaint, Delphine Brown brought a negligence suit against The Baltimore & Ohio Railroad and CSX. A review of the file indicates that both parties agreed to dismiss with prejudice The Baltimore & Ohio Railroad. However, the Plaintiff subsequently filed an Amended Complaint which listed The Baltimore &

Ohio Railroad, as well as CSX, as Defendants. The Amended Complaint added a cause of action based upon wilful and wanton misconduct. The Court is unsure of whether the Plaintiff intended to include The Baltimore & Ohio Railroad as a Defendant in its Amended Complaint or whether the Plaintiff made a simple mistake. In any event, the Plaintiff has thirty (30) days in which to inform this Court of the status of The Baltimore & Ohio Railroad in the present action.

## BACKGROUND

Ten-year old Christina Hoston was returning home on August 1, 1990, after having attended summer school in Hamilton, Ohio. While walking home, Miss Hoston crossed railroad tracks owned and operated by the Defendant CSX. While crossing these tracks, CSX's train struck and injured Miss Hoston. As a result of this accident, Christina Hoston's natural guardian, Delphine Brown, initiated this suit against the Defendant.

The accident occurred in an area with two parallel railroad tracks. Between the two tracks, there is a section of track known as a crossover which permits the transfer of a train from one track to the other. Since the crossover contains only one diagonal piece of track, sometimes it is necessary for a train to pull past the crossover and then to back down in order to switch tracks. Such was the situation in the case before this Court.

On August 1, 1990, the CSX train needed to switch tracks at this crossover. Prior to commencing the backing down of the train, the train's crew noted the length of the train. They correctly determined that sufficient room existed between the crossover and the next grade crossing to accommodate the locomotive and the cars of the train. No member of the train crew remained on the lead car [1] during the entire reversing movement. Rather, the crew member who was on the lead car had dismounted during the backing movement and waited until the maneuver was completed before reboarding at the front of the train. Having switched tracks, the train then proceeded to its destination in Cincinnati.

Unbeknownst to the members of the train's crew, Christina Hoston had been crossing the tracks and was hit by the backing train. After the train pulled away, Miss Hoston proceeded across the tracks where help was summoned. As a result of being hit by the train, one of Miss Hoston's arms had to be amputated.

The area where Miss Hoston was crossing was not a designated crossing area or graded crossing. However, some evidence exists that the public frequently used the area as a path to cross the tracks.

The Defendant seeks summary judgment, arguing that Miss Hoston was a trespasser, or at best, a bare licensee. Based upon this premise, the Defendant reasons that the Plaintiff can recover only upon proof of wilful or wanton misconduct. The Defendant further maintains that the Plaintiff has failed, as required by Rule 56(e), to produce any evidence upon which a jury could find wilful or wanton misconduct.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "... genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether issues exist that should be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert.*

---

1. Use of the term "lead car" in this case should be understood to be the car that was in front of the train while the train was reversing. In other words, it is that car which is at the opposite end of the train from the locomotive.

*denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Moreover, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.).

Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* The Supreme Court elaborated upon this standard, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. . . .

*Id.* at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Nevertheless, conclusory allegations are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

## DISCUSSION

■ The liability of a railroad company for injuries suffered by individuals upon its property is basically the same as that for any private owner of property. The obligations, or duty of care, owed to a person upon the premises is prescribed by that person's legal status. Specifically, a determination needs to be made of whether the person injured upon the property of another is a trespasser, licensee, or an invitee. Once that determination is made, then the legal duty of the property owner, in this case the railroad, can be determined.

■ Absent the showing of wilful or wanton misconduct on the part of a railroad, an undiscovered trespasser will not be able to recover against the railroad for injuries which occur during the trespass. *See e.g., Brooks v. Norfolk & W. Ry. Co.,* 45 Ohio St.2d 34, 340 N.E.2d 392 (1976). A trespasser enters private land, without expressed or implied authorization, invitation or inducement, but purely for his own purposes or convenience. *McKinney v. Hartz & Restle Realtors, Inc.,* 31 Ohio St.3d 244, 246, 510 N.E.2d 386, 388 (1987); 76 O.Jur. 3d, *Premises Liability* § 6 (1991). Thus, if Christina Hoston was a trespasser, the law imposes that CSX refrain from acting with wilful or wanton misconduct towards her.

■ If Miss Hoston's legal status was that of a licensee, recovery can be obtained only by meeting the same standard as would be necessary if she were a trespasser. *See e.g., Cleveland, C., C. & St. L. Ry. v. Potter,* 113 Ohio St. 591, 150 N.E. 44 (1925). A licensee is on the land of another with permission and acquiescence, but also for his or her own pleasure, convenience, or benefit. 76 O.Jur.3d, *Premises Liability* § 5 (1991). So, if Hoston was either a trespasser or a licensee, the railroad simply had to refrain from wilfully and wantonly causing injury to her to avoid liability.

■ However, the duty to refrain from wilfully and wantonly injuring a licensee is not absolute. A significant exception exists to this rule. Specifically, should the licensee's presence be anticipated at the place where the injury occurred, then the status of the licensee may change to that of an invitee. 78 O.Jur.3d, *Railroads* § 308 (1991). Although courts may not specifically label that person as an invitee, the duty owed to such a person is commensurate with the duty owed to an invitee—namely, reasonable care. *Id.; See Lear v. Cincinnati, H. & D. Ry.,* 11 Ohio C.C. (n.s.) 61, *aff'd* 60 Ohio St. 602, 54 N.E. 1107 (1908) (rejecting the use of a trespasser standard for a person injured on railroad tracks because ". . . a footway across railroad tracks, or long use of such a crossing,

implies a license to pedestrians to cross at that point. . . .").

## I. Defendant's Argument and Analysis

In its motion for summary judgment, the Defendant claims that the railroad is not guilty of wilful or wanton misconduct as a matter of law. In support of its contention, the Defendant cites to four Ohio cases where each of the courts properly required the plaintiff to establish wilful and wanton misconduct on the part of the railroad before imposing liability.

The first of these cases is *Brooks v. Norfolk & W. Ry.*, 45 Ohio St.2d 34, 340 N.E.2d 392 (1976). In *Brooks,* a ten-year-old boy unsuccessfully attempted to jump upon a moving train. As a result, surgical amputation of the boy's right foot was necessary. With no evidence of wanton or wilful misconduct on the part of the railroad, the Ohio Supreme Court held that a directed verdict should have been granted to the defendant railway company. In *Brooks,* the sole issue before the court was whether the record was supportive of the question of wanton misconduct on the part of the railway company. *Id.* at 36, 340 N.E.2d at 393–94. In other words, the Ohio Supreme Court determined only the issue of wanton misconduct on the part of the railway company, and did not address the legal status of the boy.

The second case which the Defendant relies upon is *Fitzgerald v. Penn Cent. Transp. Co.*, Case No. 78–AP–413 (Franklin Cty. Ct.App. Feb. 27, 1979). In *Fitzgerald,* an eight-year-old boy, while playing with some friends in a railway yard, had boarded a stationary boxcar. Subsequently, however, the train lurched forward. While the boy's friends successfully jumped from the moving boxcar, the eight-year-old boy lost his footing and fell beneath the wheels of the moving train. As a result of this accident, the eight-year-old boy lost both of his legs. Evidence before the court showed that children often explored and wandered about the railway yard. Additionally, children often used the railway yard as a shortcut to and from a nearby park. The railroad essentially ignored the children's presence. In upholding the trial court's granting of summary judgment for the railroad, the appeals court noted the previously mentioned facts, but did not address directly whether the injured boy was a trespasser, licensee, or invitee. The only mention of the boy's legal status was a reference to the trial court's determination that the boy, at the time of his accident, was a trespasser. The court provided no indication as to why the boy was a trespasser. The acquiescence of the railroad to the presence of children could have resulted in the determination that the children were licensees, while the young boy's entry into a boxcar resulted in his conduct constituting a trespass. In any event, the appeals court upheld the granting of summary judgment to the defendant railroad.

The third case cited by the Defendant in support of its motion for summary judgment is *McKinney v. Hartz & Restle Realtors, Inc.*, 31 Ohio St.3d 244, 510 N.E.2d 386 (1987). In *McKinney,* a four-year-old boy's right leg required amputation below the knee when he failed in his attempt to board a moving train. The accident occurred on railroad tracks located behind an apartment complex. Between the grass yard of the apartment complex and the railroad tracks lay a brush area. At the end of this brush area, a small hill sloped down to the railroad tracks. Several well-defined paths through the brush led down to the tracks from the apartment complex. Tenants of the apartment complex used these paths to go from the grass yard to the tracks. Employees of the railroad company had seen children in the vicinity of the tracks on occasions prior to the accident. However, no indication existed that the public habitually crossed the railroad tracks. On the previous occasions when the railroad employees saw the children near the tracks, the railroad employees had ". . . instructed them [the children] to leave the railroad right-of-way." *Id.* at 245, 510 N.E.2d at 388. Thus, there had been expressed disapproval of the children's presence upon the railroad tracks by employees of the railroad company. The court in *McKinney* found no evidence suggesting

that the railroad engaged in wanton or wilful misconduct towards the young boy. Accordingly, the court concluded that the granting of summary judgment was appropriate. However, the court based its ruling upon the determination that the young boy was a trespasser since he ventured onto the railroad's property without invitation or permission. *Id.* at 246, 510 N.E.2d at 388.

The final case upon which the Defendant relies is *Hagood v. Grand Truck W.R.R.*, Case No. C–890724, 1991 WL 6359 (Hamilton Cty. Ct.App. Jan. 23, 1991). In *Hagood*, a girl successfully jumped upon a moving train and then disembarked. However, when she attempted to repeat this act, she missed the ladder and her legs fell beneath the train's wheels. The girl injured both of her legs, and her right leg eventually had to be amputated. The accident in *Hagood* occurred in an area which habitually had been used as a pedestrian crossing. The plaintiff, in *Hagood*, asserted that the railroad's acquiescence in such use required the railroad to use reasonable care to the person who so used the crossing. While in *Brooks* and *Fitzgerald* it was unclear as to what act constituted the trespass, a careful reading of the *Hagood* opinion makes it clear that the trespass occurred when the young girl "... attempted to jump aboard the moving train without the invitation or permission of the railroad." *Id.* at 5. The railroad's acquiescence in the use of its right of way as a pedestrian crossing was not dispositive in this case. Instead, the Court relied upon the fact that the young girl was in the process of jumping a moving train in determining that she was a trespasser. As a result, the appeals court affirmed the trial court's order granting the defendants' motion for summary judgment.

## II. Plaintiff's Argument and Analysis

The Plaintiff, in opposing the motion for summary judgment, argues that the public had customarily and regularly crossed the railroad tracks at the location where Christina Hoston was crossing. The Plaintiff further maintains that this open and notorious conduct on the part of the public, along with the knowledge and acquiescence

of the railroad company, constituted an implied license. Consequently, the Plaintiff maintains that the railroad was under a duty to exercise reasonable care to the users of this implied license.

The case of *Bellefontaine & I.R.R. v. Snyder*, 18 Ohio St. 399 (1868), presents facts which are very similar to those now before this Court. In *Bellefontaine*, the plaintiff, a six-year old girl, crossed railroad tracks at a point where no public crossing existed. The place where the plaintiff crossed had been used as a crossing by children and others on a daily basis without the objection of the railroad company. While the child's attention had been diverted, a railroad car had switched tracks and backed over her. In this case, the Ohio Supreme Court applied the standard of reasonable care, not wanton or gross negligence. While the defendant sought to label the girl as a trespasser, the court did not directly address the status of the young girl. Rather, the syllabus to *Bellefontaine* states simply that it is "... the duty of·persons in charge of cars passing along streets or other frequented places to exercise great caution...." *Id.* at 399.

While *Bellefontaine* does not directly address the question of the status of a person upon a railroad's property, the Ohio Supreme Court unequivocally did so in *Harriman v. Pittsburgh, C. & St. L. Ry. Co.*, 45 Ohio St. 11, 12 N.E. 451 (1887). The court in *Harriman* recognized that as a general rule:

> ... a railroad company, between stations and public crossings, has the same exclusive control of its roadway as other owners have of their private property, and that, generally, no duty is imposed by law on the owner to keep his premises in a suitable condition for tresspassers [sic] or licensees who enter by permission only....

> It is apparent that there may be a substantial difference between absolving the owner from the active duty of providing against the danger of accident to a trespasser upon his premises, or one who enters the same as a mere licensee, and giving him the same immunity when he

knowingly places a highly explosive and dangerous instrument or agent in the way that he *knows* the licensee ... is *habitually* accustomed to go, and where an ordinary prudent person would *reasonably expect* him to go, and be thereby injured.

*Id.* at 20–21, 12 N.E. at 454 (emphasis added).

After discussing several cases on this point, the court in *Harriman* reached the conclusion that:

... where a railroad company has for a *long time permitted the public,* including children, to travel and pass *habitually* over its road, at a given point, *without objection or hindrance,* it should in the operation of its trains ... so long as it acquiesces in such use, be held to anticipate the continuance thereof; and is bound to exercise care accordingly, having due regard to such probable use, and proportioned to the probable danger to persons so using its road....

*Id.* at 31, 12 N.E. at 459 (emphasis added); *see also Ford v. Cleveland, Cincinnati, Chicago & St. Louis Ry.,* 107 Ohio St. 100, 140 N.E. 664 (1923) (reaffirming the decision in *Harriman*).

### III. Summation

█ In analyzing the legal status of Christina Hoston while she was on the premises of the Defendant, this Court finds two distinct lines of cases in Ohio on this issue. The first classifies an unwelcomed and unknown pedestrian attempting to jump a moving train as a trespasser. The second classifies a pedestrian who passes over railroad tracks habitually used by the public, and with the knowledge and acquiescence of the railroad company, as an invitee.

█ Material questions of fact exist concerning Ms. Hoston's legal status at the time of the accident as a licensee or a trespasser. Based upon Ohio law, four criteria must be met in order for a pedestrian crossing a railroad company's tracks to be classified as an invitee, and not as a trespasser or a licensee.[2] First, the railroad company must have permitted the public to travel over its property for an extended period of time. Second, this public travel must be habitual or on a regular basis. Third, the railroad must have permitted such travel without objection or hinderance so as to have acquiesced in such use. Finally, the railroad company should have reasonably anticipated the presence of such pedestrians at the place where the injury occurred. *See Ford,* 107 Ohio St. at 100, 140 N.E. at 664; *Harriman,* 45 Ohio St. at 31, 12 N.E. at 459.

In the instant case, there are genuine issues of material fact which preclude any determination of Christina Hoston's status as a matter of law. Issues of fact go to the heart of the four criteria discussed above for the determination of Christina's status. Therefore, the Ohio Supreme Court has noted that:

... where the evidence is such as to warrant, it is the duty of the trial court to submit to the jury the question as to whether the person injured on the premises of another by the claimed negligence of the owner thereof was at the time of such injury on the premises either at the express or implied invitation of the defendant, or whether he was a trespasser, or a mere licensee.

*Penn. R.R. v. Vitti,* 111 Ohio St. 670, 675–76, 146 N.E. 94, 95 (1924). Only upon the presentation of evidence will the jury be able to arrive at a decision on the status of Christina when this accident occurred. Based upon that decision, the standard of conduct for the railroad will be known.

Despite the decision that material questions of fact exist concerning Ms. Hoston's legal status, this decision is not dispositive of the Defendant's motion for summary judgment. Instead, we must interpret the facts in the light most favorable to the non-moving party, and thus we must make the

---

**2.** As noted earlier, the use of the term "invitee" is not always used in such instances. Rather, courts simply may state that the railroad company's duty to the people who meet these criteria is more than that owed to a mere or bare licensee. The standard of care owed is one of reasonable care.

assumption that Ms. Hoston is a licensee. Given this assumption, summary judgment would be appropriate only if the Defendant could establish that it has acted reasonably. However, this determination cannot be made as a matter of law. Questions of fact exist concerning the Defendant's actions. These questions of fact include whether the Defendant acted reasonably: (1) in not having a crew member on the lead car at all times during the backing movement; (2) in not warning pedestrians about the dangers in crossing the tracks in this area; and, (3) in failing to install warning devices such as flashing lights or loud sounds to warn Ms. Hoston of a moving train.

The cases relied upon by the Defendant are not conclusive in this case. Even in those instances when the railroad knew of the presence of children on the premises but failed to take action, the injury resulted not from the children's mere presence, but from an affirmative act taken by the children. In all four cases, the children were either climbing, playing, or attempting to jump upon or down from a moving train. The trains were not habitually used by the public in this manner, nor did the railroad acquiesce in any such use of the cars. Thus, the four cases relied upon by the Defendant are compatible with the line of case relied upon by the Plaintiff, but are distinguishable from the case before this Court.

### CONCLUSION

For the above stated reasons, CSX Transportation's motion for summary judgment is hereby denied.

SO ORDERED.

