DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Leroy Sutton ("Leroy"), a minor, and his mother, Katrina Sutton (collectively "Appellants"), appeal from the decision of the Summit County Court of Common Pleas, which granted summary judgment in favor of Appellee, Wheeling Lake Erie Railroad Company ("W LE"). We affirm.
 {¶ 2} Appellants filed a complaint against W LE on September 15, 2003, asserting one count of negligence, one count of nuisance and one count of loss of companionship and consortium. At age eleven, Leroy had been permanently injured by one of W LE's trains as he walked to school with his fourteen-year-old brother, Antonio, and another friend on the morning of December 7, 2001. The boys, along with other students, often walked to school along the tracks, which run east-west through the east section of the City of Akron.
 {¶ 3} On the morning of December 7, 2001, several groups of kids, including Leroy and his brother, were walking next to the tracks in different clusters when a train approached them from behind. Prior to approaching the children, the conductor noticed some debris on the tracks and slowed the train to almost a complete stop. The conductor determined the debris would not impede or derail the train, and ordered the engineer to proceed.
 {¶ 4} All of the children moved away from the tracks well in advance of the oncoming train; Leroy continued walking on the right side and his brother crossed the tracks to the left side. They continued walking in the direction the train was traveling and, within a few minutes, the train passed between them. The train was comprised of thirteen cars, each one approximately fifty feet long, and was traveling at ten miles per hour. Leroy walked along the gravel incline next to the tracks, known as the ballast, which sloped downward from the tracks to the ground. Walking on the ballast put him within two to three feet of the train as it progressed forward. After approximately six cars had passed Leroy, his foot slipped on the gravel and he lost his balance. Conflicting testimony makes it unclear as to what happened next, but when Leroy's foot slipped and he spun to the left to regain his balance, his right arm came in contact with the train, which caused him to be dragged for a short distance before he was pulled underneath the passing car. Antonio claimed that while he was standing on the opposite side of the tracks from his brother, with the train passing between them, he saw a three-foot bar protruding from the far side of the train. Antonio stated that this protruding bar caught the arm of his brother's jacket, which caused him to be pulled under the train. Leroy stated that he does not know what his jacket became caught on.
 {¶ 5} Antonio then ran to his brother after the train had passed and moved him off the tracks, where another individual called 911. Leroy's legs were subsequently so severely injured that both required amputation, and he underwent numerous operations and long-term physical therapy in order to use a wheelchair and prosthetic legs. Subsequent to the accident, the train crew was not cited by Akron Police for any violations of local, state or federal law, regulations or ordinances.
 {¶ 6} W LE filed a motion for summary judgment on July 23, 2004, and Appellants responded with a motion in opposition on September 1, 2004. The trial court granted W LE's summary judgment motion on March 24, 2005, concluding that Leroy was a trespasser who entered W LE's right of way for his own convenience. The trial court found that W LE's duty to Leroy was to refrain from injuring him by willful or wanton conduct, and stated there was no material issue of fact establishing any negligence or willful and wanton conduct on the part of the railroad.
 {¶ 7} Appellants appealed, asserting two assignments of error for our review. For ease of discussion, we shall address the assignments of error out of order.
 ASSIGNMENT OF ERROR II
"The court erred in granting summary judgment by ruling that [Appellant], Leroy Sutton was a trespasser as a matter of law to whom [Appellee] owed no duty other than injuring him by willful and wanton conduct."
 {¶ 8} In his second assignment of error, Appellants argue that the trial court erred in granting W LE summary judgment because W LE did not owe a duty of care to Leroy other than not injuring him through willful or wanton conduct. Specifically, they argue that Leroy's status as a trespasser is a disputed issue of fact, and that W LE owed him a higher duty of care through application of the attractive nuisance doctrine. We disagree.
 {¶ 9} Appellate courts consider an appeal from summary judgment under a de novo standard of review. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Unlike an abuse of discretion standard, a de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. Thus, this Court applies the same standard as the trial court, viewing the facts of the case in a light most favorable to the non-moving party. Civ.R. 56(C); Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2.
 {¶ 10} Summary judgment is proper under Civ.R. 56 when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion, and that conclusion is adverse to the non-moving party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
 {¶ 11} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Civ.R. 56(E) provides that after the moving party has satisfied its burden of supporting its motion for summary judgment, the non-moving party may overcome summary judgment by demonstrating that a genuine issue exists to be litigated for trial. State ex rel. Zimmermanv. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 12} To overcome summary judgment on a claim of negligence, a plaintiff must show a duty and breach of that duty as the direct and proximate cause of an injury. Chambers v. St. Mary'sSchool (1998), 82 Ohio St.3d 563, 565. A duty of care is not assumed, but may be based on the classification of the property owner. See Gladon v. Greater Cleveland Regional Transit Auth.
(1996), 75 Ohio St.3d 312, 315. In the present case, the relevant classification and corresponding duty are for that of a trespasser.
 {¶ 13} A trespasser is "one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience." McKinney v. Hartz Restle Realtors, Inc. (1987), 31 Ohio St.3d 244, 246. The property owner owes this trespasser a duty "to refrain from willful, wanton or reckless conduct which is likely to injury him." Gladon at 317; Cole v. New York Central R.R. Co.
(1948), 150 Ohio St. 175, 185.
 {¶ 14} In ruling on W LE's motion for summary judgment, the trial court found that Leroy was a trespasser when he "without express or implied authorization, invitation or inducement, entered the railroad right of way for his own convenience." This Court agrees. Wheeling owns the property where the accident occurred, and both Leroy and his brother stated they entered the railroad's property without permission because it was the shortest and most convenient route to school.
 {¶ 15} With regards to W LE's duty to a trespasser, the Ohio Supreme Court defined willful and wanton conduct inMcKinney by stating:
"Willful conduct `involves an intent, purpose or design to injure.' Wanton conduct occurs when one `fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is a great probability that harm will result[.]'" Id. at 246. (Internal citations omitted.)
Based on the foregoing legal standard, this Court is unable to find any evidence of willful or wanton conduct on the part of W 
LE, and therefore we can find no breach of duty by the railroad to Leroy. "[A] railroad owes no duty to anticipate or prevent the presence of licensees or trespassers." Gladon at 317. Furthermore, "failure to prevent trespass is not negligence in Ohio." Brooks v. Norfolk Western Ry. Co. (1976),45 Ohio St.2d 34, 38, citing Morganstern v. Austin (1959),170 Ohio St. 113. The Brooks Court went on to say that "for many years it has been the law of Ohio that the failure of a railroad to fence its right-of-way against trespassers is not negligence for the reason that there is no duty to do so by statute or at common law." Id., citing Lake Shore Michigan So. Ry. Co. v. Liidtke
(1904), 69 Ohio St. 384.
 {¶ 16} We are further persuaded by the Fourth District Court of Appeals' analysis in the railroad trespassing case Boydstonv. Norfolk S. Corp. (1991), 73 Ohio App.3d 727. In this case, three men were struck and injured while crossing a trestle bridge which contained two railroad tracks. The men claimed the railroad was negligent because they had acquiesced to individuals crossing the tracks. The railroad moved for summary judgment claiming the men were trespassers and arguing the railroad's duty did not go beyond the wanton and willful conduct standard. The Court stated:
"We disagree that [the railroad's] inaction with respect to trespassers was a manifestation of consent to the public to use the bridge as a walkway. At one time in Ohio it appears that a railroad would be deemed to have acquiesced to the use of its property by the habitual use of its tracks by the public. * * * However, the more modern approach in cases involving railroads is that `the mere toleration of continued intrusion where objection or interference would be burdensome or likely to be futile * * * is not in itself and without more a manifestation of consent.' Prosser Keeton, The Law of Torts, supra, at 414, Section 60. The Restatement of the Law 2d, Torts, supra, at Comment c, sets forth the following reasons for this approach: `A failure to take burdensome and expensive precautions against intrusion manifests only an unwillingness to go to the trouble and expense of preventing others from trespassing on the land, and indicates only toleration of the practically unavoidable, rather than consent to the entry as licensee. Even a failure to post a notice warning the public not to trespass cannot reasonably be construed as an expression of consent to the intrusion of persons who habitually and notoriously disregard such notices.'" Id. at 731.
Here, W LE did not give anyone permission to enter their property, including their track lines. Even if individuals routinely used the property as a pathway, W LE's failure to prevent such trespassing is not willful, wanton or reckless conduct. Despite Appellants' argument that W LE's acquiesced to minors using the railroad's property to walk to school, this does not rise to the level of negligence or a breach of W LE's duty to trespassers.
 {¶ 17} Next, Appellants argue that there is a dispute as to whether Leroy was an undiscovered or discovered trespasser. As discussed above, the duty to an undiscovered trespasser is to refrain from injuring him by willful, wanton or reckless conduct. However, the duty to a discovered trespasser is one of ordinary care, which is a higher standard. Fath v. Mutual Oil Gas Co.
(Sept. 6, 2000), 9th Dist. Nos. 19851 and 19856, at 2.
 {¶ 18} In Fath, this Court stated:
"Through their review of the `discovered trespassers' cases, the plaintiffs have suggested that all that is required to elevate one's status from undiscovered trespasser to discovered trespasser is notice by the landowner of past instances of trespassing somewhere on his property. While notice of prior trespasses is required to elevate the landowner's duty to a trespasser, that factor standing alone is not enough."
We went on to say that a trespasser's status can be elevated to that of discovered trespasser in the following situations: (1) constant trespassers and a latent, active or artificial danger, (2) known trespassers, and (3) trespassing children, also known as the attractive nuisance doctrine. Id. at 2-3. It is the attractive nuisance doctrine that Appellants argue applies in this case. We find this argument to be meritless.
 {¶ 19} In arguing Leroy was a discovered trespasser, Appellants contend that Bennett v. Stanley (2001),92 Ohio St.3d 35, applies here. In Bennett, the Ohio Supreme Court was faced with the issue of whether or not a child trespasser should be owed a different standard of care. In its discussion, the Court noted it had previously adopted the "dangerous instrumentality" exception, which imposes a higher duty of care to a child trespasser when the landowner negligently operates hazardous machinery or similar apparatus, "the dangerousness of which is not readily apparent to children." Id. at 39. The Court then extended the protection of children by adopting the attractive nuisance exception:
"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon land if:
"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." Id. at 40, quoting the Restatement of the Law 2d, Torts (1965), Section 339.
This Court is not persuaded that a moving train falls under the category of an attractive nuisance, as it "is not a subtle or hidden danger and its potential for causing serious bodily injury or death to anyone in its path is readily apparent, even to young children." McKinney, 31 Ohio St.3d at 247. We agree with theMcKinney Court when it concluded, "`Nothing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling, string of railroad cars.'" Id. at 247-248, quoting Herrera v. Southern Pacific Ry. Co. (1961),188 Cal.App.2d 441, 449.
 {¶ 20} Moreover, in adopting the attractive nuisance doctrine, the Bennett Court specifically stated that the landowner's duty
"does not extend to those conditions the existence of which isobvious even to children and the risk of which should be fullyrealized by them." Id. at Comment i. Also, if the condition of the property that poses the risk is essential to the landowner, the doctrine would not apply[.]" Bennett,92 Ohio St.3d at 42. (Emphasis added.)
At the time of the accident, Leroy Sutton was an eleven-year-old child who could fully appreciate the obvious dangers and risks that a moving train possessed. Leroy's own admissions also preclude the application of the attractive nuisance doctrine:
"Q. Let me ask you this. Do you think you did anything wrong?
"A. Yeah. Walked on that track.
"Q. Walking too close to that train?
"A. [Yes.]
"Q. You had room to move over and move away from the train, correct?
"A. Yeah.
"Q. And there were other routes that you could take to go to school, you could have gone the other path away from completely off the railroad property, correct?
"A. Yeah.
"Q. You certainly knew the train was coming through there that day, part of it had passed you and everything, right?
"A. Yeah."
Leroy stated that he knew the train was coming, he heard the train's warning bell ringing, and that there was no reason why he did not move off the ballast to the ground's level walkway. He also said that his mother had warned him not to get too close to a train, and that he knew it was dangerous to get too close to a train.
 {¶ 21} Appellants attempt to argue that the debris the train crew knew to be on the tracks was the cause of Leroy's accident, and thus the debris made the train an attractive nuisance because the debris then increased the risk of death or serious bodily to the children. They first theorize that when the train ran over the debris, a wooden frame of a discarded television set, part of the debris ended up lodged at the rear of the train where a three-foot object attached itself to the train and caught onto Leroy's arm as the train passed by. Further in Appellants' brief, they hypothesize that it was possibly a crowbar or other protruding object, and state that Leroy could not appreciate the danger because the object was not open and obvious. This Court does not find these theories to be applicable to the attractive nuisance doctrine or the possibility of Leroy being a discovered trespasser, as Appellants alternatively argue.
 {¶ 22} A party must exercise ordinary care when a discovered trespasser is in a position of peril. However, when the train passed Leroy, he was not in a position of peril. The train crew did not see him walking on the ballast once the engine car passed him. In Hagood v. Grand Trunk Western R.R. Co. (Jan. 23, 1991), 1st Dist. No. C-890724, the First District Court of Appeals was faced with this same issue. They concluded:
"As the train approached, [the child] stood off to the side of the tracks. She was not in a position of peril and the railroad had no duty to stop the train merely because people were standing near the railtracks. The testimony of the crew members indicates that no one saw [the child] or any of the children attempting to hop the train. [The child] can only be held to be an undiscovered trespasser and, under the circumstances, the railroad owed her no duty except to avoid injuring her by willful and wanton misconduct." Id. at 2.
Leroy stated that more than six cars had passed him before the accident occurred. He had ample opportunity to move away from the train and walk on even ground at a safer distance from the train, but instead chose to walk directly next to the moving train on the gravel ballast. We can find nothing in the record that indicates the train crew did not exercise ordinary care, as they had maintained a proper lookout, kept the train at a lawful rate of speed and had rung the warning bell well before they came upon the children.
 {¶ 23} This Court concludes that Leroy Sutton was a trespasser on W LE's property on the morning of the accident, and therefore the railroad did not owe him a higher duty of care other than to refrain from injuring him by willful, wanton or reckless conduct. Thus, we find that the trial court did not err when it granted summary judgment to W LE. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR I
"[Appellant] was denied due process of law when the court erroneously relied on the `physical facts' rule to conclude that there was no genuine issue of fact."
Our disposition of Assignment of Error II renders the remaining assignment of error moot, and we decline to address it. See App.R. 12(A)(1)(c).
 {¶ 24} Appellants' second assignment of error is overruled, and remaining assignment of error is moot. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Exceptions.
Moore, J., concurs.