**EUCLID-105TH ST. PROPERTIES CO. v BECKMAN**

Ohio Appeals, 8th District,

Cuyahoga Co.

No. 12,017. Decided Nov. 9, 1931.

E. A. Binyon, Esq., Cleveland, for plaintiff in error.

Steuer, Briggs & Siegel, Cleveland, for defendant in error.

**OPINION**

By VICKERY, J.

This cause comes into this Court on a petition in error to the Common Pleas Court of Cuyahoga County, in which court the defendant in error as plaintiff recovered a judgment for $7500 for personal injuries she alleges to have received by reason of having fallen through what was afterwards showns to be a skylight, which apparently had been covered over with tar paper and gravel, so that it looked like the rest of the roofing of the area-way hereafter to be described.

After the verdict was rendered a motion for a new trial was made and overruled and judgment entered upon the verdict, and it is to reverse that judgment that error is prosecuted here, as already stated.

From the record, arguments of counsel and briefs we learn that Mrs. Beckman was a woman employed by one of the tenants, Mrs. Ramage, who occupied one of the apartments in this large apartment house. The apartment building was several stories high and the first floor seems to be occupied or was occupied for business purposes at least partly, and over this business place between the wings of the apartment was an area-way about 28 feet long and 9 feet wide. Two suites in the apartment-house had windows on this area-way, the windowsills being a couple of feet above the floor roof of the area-

way. In this area-way was originally constructed a skylight which was elevated a little distance above the rest of the roof sloping down to it. Just how much nobody in this case seems to know exactly, whether it was two inches, six inches or eight inches.

Apparently the use of the skylight had been discontinued and from the record we learn that at some time at least five or six years before this accident, the glass covering the area given up to the skylight which, I believe was ten feet long and about three or four feet in width, had been covered with roofing or tar paper, and there is evidence in the record to show that this space had been graveled over so that in appearance it was just the same as the rest of the roof area-way. In fact all the testimony is to the effect that there was no difference in so far as the looks was concerned, and there is positive evidence to show that it was covered with tar paper, and on top of that was gravel such as is usually used on a gravel roof of the same appearance and consistency as the rest of the roof covering the area-way.

From the record we learn that Mrs. Beckman had been working for Mrs. Ramage for more than a year and a half and one of Mrs. Ramage's windows, or perhaps two or more of those in her suite opened out on to this area-way, immediately above the roof thereof, and it had been her custom and habit in washing the windows to step out on to this area-way roof to wash the windows. She had been doing this for a year and a half and there is evidence in the record to show that she had often stepped upon this little elevated platform which once had constituted the skylight, and apparently the tar

paper was of such consistency that it held her weight, and there is evidence in the record to show that not only Mrs. Ramage and her work woman, but other tenants in the other suite, had likewise used this area-way roof to step upon when they washed the windows of the suite occupied by them which opened out just above this area-way roof; that mops and wash-cloths and pails were left standing there, and that condition of affairs was continuous for five or six years.

Now there were no doors opening on to this area-way from any of the suites. One end of it was left open. The other three sides were surrounded by the walls of the apartment house. At the open end of this area-way there was a grill work of iron nine or ten feet high which would prevent persons from stepping on to the roof of the area-way from a passageway or stairway that ran up close to it. but there was no grill-work or railings protecting the windows opening out onto and just above this area-way, nor were any notices posted that the glass had been covered over with tar paper, or with any other substance that would show those getting on to the roof that the center part, ten by three or four feet, which had been used as a light shaft was no longer used for that purpose; nor was there any warning that employees or tenants in the apartments, whose windows were close to this roof, should remain off the roof, that the same was dangerous.

There was evidence in the record to show that janitors or other employees of the apartment house had frequently seen the plaintiff and others washing windows from this roof, and no caution of any kind was given them nor were any orders promulgated that they should not use the roof. These things become important as we review the record.

On August 17, 1929, Mrs. Beckman, as employee of Mrs. Ramage, was instructed by her employer to wash the windows that opened out on to this area-way and she did as she had often and perhaps always done when washing these windows, went out on the area-way and while washing the windows she stepped upon this little elevated portion that had once been the skylight, not knowing but that it was as solid as the rest of the area-way roof, for to all appearance it seemed that way, and in stepping upon it she stepped upon the glass which had been covered with the tar paper and gravel, whereupon the glass broke and she fell some ten to fifteen feet into the store below and was injured as in the manner detailed in the evidence. She was taken to the hospital and stayed there for some time and was injured more or less, as shown by the evidence.

Now when this case was tried, at the conclusion of all the plaintiff's testimony the defendant made a motion to direct a verdict on the ground that the plaintiff was either a trespasser or at best a licensee, and inasmuch as the defendant company had not done anything wilfully to cause her injury, from the plaintiff's own testimony she was not entitled to recover. This motion was overruled and again at the close of the defendant's testimony, which did not change in our opinion the record, or in any way lessen the liability of the defendant, if there were any liability in the first place, a motion was again made to arrest the testimony from the jury and to direct a verdict, which motion was again overruled and the errors that are

urged why this verdict and judgment thereon should be reversed, are mainly based upon the overruling of the motions already alluded to; that the judgment was excessive, and that the court erred in his charge to the jury.

We have gone over this record and have taken up all the errors and we cannot agree with the learned counsel for the defendant that the court erred in not directing a verdict, either at the close of the plaintiff's testimony or at the close of all the ▮▮▮ testimony. If we understand the law upon this subject it is that while the defendant is not liable for ordinary negligence to a trespasser or a licensee, perhaps owing a less duty to a trespasser than to a licensee, yet we think the law is very clear that, confining our attention to that of a licensee only, because we think that is what this woman was in the instant case, while we admit that the owner of the premises would not be liable for ordinary negligence to a licensee, yet where a situation is created and tolerated by the defendant, ▮▮▮ the owner of the premises, which amounts to a trap or hidden danger covered up, and a licensee is injured by reason of that hidden danger or trap, as one might say, the defendant is responsible and liable for the damages that result therefrom.

Now assuming that this woman was only a licensee, that there was no contract relation between her and the owners of the building, that they owed her no particular duty, yet they had no right to maintain a hidden trap, or if trap be too harsh a word, to have a hidden danger which might result in injury to a licensee going upon the premises.

Now one can hardly imagine a more serious hidden danger than that of covering up what was designed to be a skylight with tar paper and gravel so that it would look like the rest of the roof, apparently laid upon a solid foundation. To cover up glass, to have it appear that it was a tar and gravel roof, surely would be laying a trap for somebody who went across that property rightfully or wrongfully. We can hardy conceive of a more dangerous thing to do than was done in this case. It seems almost incredible that any building owner be so crazy as to cover up a glass and putting in solid material upon which to put roofing would leave that glass as the foundation and basis upon which to put tar paper and gravel and make it appear like the rest of the roof. Anybody would naturally think in seeing it in that condition, that it was a safe place to walk upon. Nobody would think that an owner of a building would be so crazy as to cover up a glass skylight, after it ceased to become useful, with tar paper and gravel and make it appear like a tar and gravel roof.

So there was undoubtedly, as shown by the record,—and the more one studies the record the more conclusive it seems to be,— a hidden danger, and if one admits that this woman ▮▮▮ was a licensee, then there cannot be any question but what the owner of the premises would be liable for damages.

Now let us see as to plaintiff being a licensee. It is argued that the grill work where this area-way opens, would indicate that nobody was to go in on that area-way That apparently was done for the purpose of keeping persons from going over that area from the steps

or passageway on the outside, and the purpose may have been to keep pilferers, prowlers and robbers from entering from that way the apartments the windows of which opened on to this area-way. But there was no grill work or anything to prevent the persons who lived in these apartments, whose windows opened on to the area-way, from going out of these windows on to the area-way.

Now the window-sill was a couple of feet from the roof of the area-way and when any employee would wash windows, this looking like a solid place, they would stand on this space, and it was a tacit and implied invitation for them so to do, and there should have been a warning there to warn persons not to do that, or there should have been a grill work or something to keep persons from opening the windows and getting out on to this area-way. It is the common thing to do, the natural thing to do and the thing that the owners of the building might naturally anticipate or suppose would be done, and in this particular case that does not stand alone for it had █ been done in this way for five or six years to the knowledge of the employees of the building, if not the owners.

Now this woman going out there to wash these windows as she had done many times before, without knowing of this hidden danger, but believing as she might readily believe from the appearance of all of this roof of the area-way that it was a gravel and tar roof, put her weight upon it and underneath was the glass through which she crashed and fell on to the floor below. We say that in this case there was a hidden danger and that that hidden danger was there to the knowledge of the owners, because they themselves covered up the glass. Almost they ought to be liable for punitive damages in permitting that sort of thing to be done on a building, because anybody might have gone out on to that roof. A fire might occur and people be forced to get out that way in order to get over the grill work to the stairway, and then this trap that would be laid there for them, would precipitate them to the first floor.

There is not any one of the cases that has been cited by the learned counsel for plaintiff in error which at all comprehends the question. All authorities seem to hold that where there is a hidden danger and a licensee not knowing of that danger is injured by reason of it, such person may recover damages.

Now it is not for a reviewing court to nicely balance the amount of recovery. The only wonder is that this woman was not killed in her fall through the skylight, so-called. of the area-way to the floor beneath. The jury heard all of this evidence and the court properly charged the jury and as for the fault that is found with the charge, we think the charge is entitled to commendation rather than criticism. It analyses the subject and fairly submitted it to the jury and in proper language, we think.

We cannot say that this verdict is excessive. We do not think there is any error in this record that would warrant a reviewing court in reversing the judgment.

We, therefore, unanimously affirm the judgment of the court below.

LEVINE, PJ. and WEYGANDT, J., concur in judgment.