DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Anne Norris, appeals from the judgment of the Lorain County Court of Common Pleas. We affirm.
 I.
On August 13, 1994, appellant Anne Norris entered into a purchase agreement with Dale Yost Construction Company ("Yost") to buy a condominium at the Villas at Highland Park. The purchase agreement stated that "Buyer shall have the right to inspect the Unit while under construction at reasonable times, without interfering with construction work, and at Buyer's sole risk of injury, loss or damage." The agreement defined "the `Unit'" as Condominium unit No. 12B. The unit was located in Building No. 12 which had two units, 12A and 12B, that were to be separated by a concrete firewall. During the early phases of construction, Ms. Norris visited the construction site to inspect the progress on her new home, but did not go inside until the day of her accident.
On September 22, 1994, pursuant to the purchase agreement, Ms. Norris went to inspect her condominium after work and arrived at the construction site at approximately 7:00 p.m. Since virtually all of the workmen had gone home, the area was deserted. At the time, a subcontractor of Yost had most of the interior framing installed on appellant's unit, and the exterior had wood sheathing. She parked her car on the street and then entered her unit through the garage. She inspected the house, but did not attempt to view the basement. The stairs had not yet been constructed and a plywood board had been nailed over the basement opening. Instead of leaving the same way she had entered (through her garage), she stepped through a gap in the firewall that divided the two units and entered her neighbor's unit, unit 12A. Unit 12A was in the same phase of construction as Mr. Norris's unit and also had plywood covering the staircase opening. As she was exiting the building, she stepped on the plywood, which was covering the hole to the basement. The plywood covering unit 12A's staircase opening was similar in color to the rest of the flooring, but was thinner than the floorboards. The plywood broke and Ms. Norris fell into the basement, suffering severe injuries.
Ms. Norris filed a complaint in the Lorain County Court of Common Pleas on September 20, 1996, naming Dale Yost Construction Company and John Doe (a subcontractor) as defendants. Prior to this, on September 16, 1996, Qualchoice, Inc., who was Ms. Norris's medical insurer, filed a related subrogation claim seeking to recover the medical expenses that arose out of the injuries that appellant suffered at Yost's construction site. These two claims were consolidated in a journal entry dated September 2, 1997.
On May 18, 1998, Yost filed a motion for summary judgment pursuant to Civ.R. 56 arguing (1) that Ms. Norris expressly and contractually assumed the risk of injury while inspecting the construction site, (2) that Ms. Norris was a trespasser to whom Yost did not owe a duty of ordinary care, and (3) that if Ms. Norris's personal injury claim fails, so must the insurer-subrogee's claims. Ms. Norris and Qualchoice filed a brief in opposition arguing that material issues of fact remained with regard to (1) whether she could reasonably believe that egress through her neighbor's unit was an appropriate means of exiting her unit, (2) whether the plywood covering the hole constituted a hidden trap, and (3) whether the contractual waiver of liability applied to the accident in Ms. Norris's neighbor's unit. In an order journalized on September 3, 1998, Yost's motion for summary judgment was granted. This appeal followed.[1]
Appellant asserts three assignments of error. We will address each in due course, consolidating the second and third assignments of error, as they share common issues.
 II.
A. First Assignment of Error
 The trial court erred when [sic] determining questions of fact in interpreting the terms of an ambiguous contract term when granting appellee's motion for summary judgment.
Ms. Norris argues that the contract provision regarding the invitation to inspect and the express waiver of liability was ambiguous and thus was not properly decided on summary judgment.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Appellate review of a lower court's entry of summary judgment isde novo, applying the same standard used by the trial court.McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. Henkle v. Henkle (1991),75 Ohio App.3d 732, 735.
Express assumption of risk arises when a person expressly contracts not to hold another liable for any future injuries caused by that person's negligence. Anderson v. Ceccardi (1983),6 Ohio St.3d 110, 114. Thus, a defendant can only be liable if his conduct was willful or wanton. Cain v. Cleveland ParachuteTraining Ctr. (1983), 9 Ohio App.3d 27, 28.
Generally, courts presume that the intent of the parties can be found in the written terms of the contract. Shifrin v. ForestCity Ent., Inc. (1992), 64 Ohio St.3d 635, 638. When the language of a contract is clear and unambiguous, a court cannot create an "intent not expressed in the clear language employed by the parties." Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,246. In Alexander, the Supreme Court set forth a test for determining whether a term or terms in a contract are ambiguous: "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Id. at paragraph two of the syllabus. Thus, if a contract is unambiguous, the language of the contract controls and "[i]ntentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53.
In the case at bar, we find the terms of the purchase agreement signed on August 13, 1994 to be clear and unambiguous. Ms. Norris asserts and we agree that the Unit is defined as "Condominium Unit No. 12B." However, we conclude that, contrary to appellant's assertion, the statement in the purchase agreement that "Buyer shall have the right to inspect the Unit" was restricted to unit 12B and did not extend to her neighbor's unit, 12A. By limiting the provision to unit 12B, the contract excluded the other areas of the construction site, such as unit 12A, from the invitation, inclusio unius est exclusio alterius. Similarly, Ms. Norris's express waiver of tort liability in the purchase agreement is likewise limited to injuries sustained while in unit 12B. We hold that by giving the terms of the purchase agreement their ordinary meanings, no manifest absurdity results. Therefore, we conclude that the waiver and the invitation applied only to Ms. Norris's unit, unit 12B, and are not dispositive of this case. Ms. Norris's first assignment of error is overruled.
B. Second Assignment of Error
 The trial court erred in determining appellant's status on appellee's property which necessitates deciding questions of fact.
Third Assignment of Error
 The trial court erred when after determining what the appellant's status on the property was, deciding that the appellant [sic] had no duty to the appellee [sic] which involves deciding another question of fact.
In her second assignment of error, Ms. Norris asserts that the trial court erred in granting summary judgment in favor of Yost because there are material issues of fact still in dispute as to Ms. Norris's status when she entered her neighbor's condominium unit. Similarly, in her third assignment of error, Ms. Norris contends that the trial court erred because there were still material questions of fact regarding whether appellee owed Ms. Norris a duty of care and whether it was breached. We disagree.
The court will review these two assignments of error pursuant to the summary judgment standard set forth above.
To establish an actionable cause of action in negligence, the plaintiff must establish "`the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom.'"Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142, quoting Menifeev. Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75, 77. "The existence of a duty [owed to the plaintiff] is fundamental to establishing actionable negligence." Jeffers,43 Ohio St.3d at 142. In landowner liability cases, the duty of care owed depends upon the status of the plaintiff, as "Ohio adheres to the common-law classifications of invitee, licensee, and trespasser."Gladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 315, citing Shump v. FirstContinental-Robinwood Assoc. (1994), 71 Ohio St.3d 414, 417.
Invitees are those who rightfully enter onto the land by invitation for some purpose beneficial to the owner. Light v.Ohio Univ. (1986), 28 Ohio St.3d 66, 68. The status of invitee is not immutable but is limited by the scope of the owner's invitation. Gladon, 75 Ohio St.3d at 315, quoting 2 Restatement of the Law 2d, Torts (1965) 181-182, Section 332, Comment l. If an invitee goes beyond the area that is reasonably considered to be part of the invitation, he loses his invitee status and becomes either a licensee or a trespasser. Id.
One is a licensee if he "goes upon lands of another by permission and acquiescence [of the landowner] for [the licensee's] own pleasure or convenience and not by invitation[.]"Hannan v. Ehrlich (1921), 102 Ohio St. 176, 185. "[I]mplied consent may be interpreted from acquiescence to continued use of the property by the public." Easterling v. Am. Olean Tile Co.,Inc. (1991), 75 Ohio App.3d 846, 853. A licensee assumes the attendant risk and danger of entering upon the land. Hannan,102 Ohio St. at 185. However, "[a] trespasser is one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience."McKinney v. Hartz Restle Realtors, Inc. (1987), 31 Ohio St.3d 244,246.
While a landowner owes a duty to exercise ordinary care to an invitee, he owes no duty of care to a licensee or trespasser, except to refrain from willful, wanton or reckless conduct. SeeGladon, 75 Ohio St.3d at 317; McKinney, 31 Ohio St.3d at 246;Light, 28 Ohio St.3d at 68-69; Soles v. Ohio Edison Co. (1945),144 Ohio St. 373, paragraph one of the syllabus. "Willful conduct `involves an intent, purpose or design to injure.'" McKinney,31 Ohio St.3d at 246, quoting Denzer v. Terpstra (1934), 129 Ohio St. 1, paragraph two of the syllabus. "Wanton conduct occurs when one `fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result.'"McKinney, 31 Ohio St.3d at 246, quoting Hawkins v. Ivy (1977),50 Ohio St.2d 114, syllabus.
In addition, a licensee is owed an extra duty of protection in that a licensee must be warned of hidden dangers, pitfalls or obstructions. Hannan, 102 Ohio St. at 185-86; see, also, Light,28 Ohio St.3d at 66, 68-69. Moreover, if the landowner knows of the presence of such danger, the licensee must be alerted to any danger, which the landowner should reasonably believe that the licensee will not discover.[2] Wiley v. Natl. Garages, Inc. (1984), 22 Ohio App.3d 57, 62; see, also, Salemi v. Duffy Constr.Corp. (1965), 3 Ohio St.2d 169, paragraph two of the syllabus; 2 Restatement of the Law 2d, Torts (1965) 932, Section 342.
In her second assignment of error, appellant contends that there is a question of fact as to whether she retained her invitee status. She argues that leaving through her neighbor's condominium unit was a reasonable means of egress; thus, she did not exceed the scope of her invitation. We disagree.
Upon reviewing the record in the case at bar, we cannot say that the trial court erred in granting summary judgment for Yost. When the plaintiff's status, i.e. licensee or invitee, depends on the resolution of conflicting evidence, it is a question for the finder of fact; however, in a case where the relevant facts are undisputed, the determination of the plaintiff's status is a legal question for the court. Wiley, 22 Ohio App.3d at 62, quoting 62 American Jurisprudence 2d (1972) 274, 275, Premises Liability, Section 39. In the case at bar, we find that the relevant evidence is not in conflict, and hence, appellant's status is a question of law for the court. As previously noted, the purchase agreement, which appellant read and signed, stated that the invitation to inspect the progress of construction only applied to the "Unit," defined as "Unit No. 12B," and did not include her neighbor's unit, 12A. Moreover, in her deposition, Ms. Norris testified that she knew that the firewall separated the two units and that she was in the neighbor's unit when she fell. Furthermore, Yost did not give implied consent or acquiesce to Ms. Norris's presence in her neighbor's unit, but rather, Ms. Norris chose to exit through her neighbor's unit and not via the garage, through which she had safely entered. Thus, we conclude that since Ms. Norris knew there was an express limitation on her invitation, and despite this limit, knowingly entered her neighbor's unit, Ms. Norris exceeded the scope of her invitation and is a trespasser as a matter of law. We further hold that there are no issues of material fact in dispute regarding Ms. Norris's status and that the trial court did not err in granting summary judgment. Hence, appellant's second assignment of error is overruled.
Finally, in appellant's third assignment of error, she asserts that a question of fact remains regarding whether appellee breached a duty it owed her. We disagree.
Since Ms. Norris is a trespasser, Yost did not owe Ms. Norris a duty of ordinary care, except to refrain from willful and wanton conduct. See Gladon, 75 Ohio St.3d at 317. The appellant does not assert, nor does the record indicate that Yost acted in a willful and wanton manner. "Willful conduct `involves an intent, purpose or design to injure.'" McKinney, 31 Ohio St.3d at 246, quoting Denzer, 129 Ohio St. at paragraph two of the syllabus. In the case at bar, there is no evidence that appellant intended to injure Ms. Norris.
Similarly, the record does not indicate that Yost acted wantonly by nailing plywood over the hole. "Wanton conduct occurs when one `fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result.'" McKinney, 31 Ohio St.3d at 246, quoting Hawkins,
50 Ohio St. 2d at syllabus. In the present case, there is no evidence that Yost acted wantonly. In fact, the evidence is to the contrary. John Prete, Yost's construction superintendent, inspected the two units and even stood on the plywood covering the basement opening of Ms. Norris's unit. Thus, there is no evidence that Yost had any notice that the plywood was insecure or that there was a great probability that harm would result. Furthermore, the evidence indicates that Yost nailed the board over the hole as a safety precaution, in order to protect its workers from accidentally falling into the basement. Lastly, appellant's reliance on hidden trap analysis is misplaced because a landowner only owes licensees, not trespassers, a duty to warn of hidden dangers, pitfalls, or obstructions.[3] Hannan,102 Ohio St. at 185-86. We hold that there is no issue of material fact as to whether Yost acted in a willful or wanton manner; therefore, the trial court did not err in granting summary judgment. Appellant's third assignment of error is overruled.
 III.
Appellant's three assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM G. BATCHELDER
FOR THE COURT BAIRD, P.J., CONCURS
[1] Only Anne Norris filed an appeal from the decision; Qualchoice, Inc. did not.
[2] In determining whether there is a hidden trap which triggers the duty to warn, it is not necessary for the landowner to have an intent to injure the licensee. Rather, the possessor of the land was under an obligation to warn the licensee of any concealed dangerous conditions on the premises of which he had knowledge.
* * *
 The duty [to warn] arises only when the occupier has actual knowledge of the risk, *** and he is held to the standard of a reasonable person in realizing the significance of what he has discovered.
(Footnote omitted). Prosser, Law of Torts (5 Ed. 1984) 417, Section 60. The licensor generally does not have to warn the licensee of dangers that are open and obvious. Id. at 416-18.
[3] Appellant relies heavily on Euclid-105th St. Properties Co.v. Beckman (1931), 36 Ohio Law Abs. 164. In Beckman, a maid went onto the roof of an apartment complex in order to clean the windows. The roof had glass skylights, which the owner had covered with tarpaper and gravel, making the entire roof seem like a single solid surface. The skylights were perfectly camouflaged. When the maid stepped on the skylight, it broke and she fell through, suffering severe injuries. The court held that although the landowner would not be liable for ordinary negligence to the maid, who was a licensee, the landowner could be held liable for a condition that amounts to a hidden trap or danger. Beckman, 36 Ohio Law Abs. at 167.
Beckman, however, can be distinguished. The maid in Beckman
was a licensee and not a trespasser as is Ms. Norris in the present case. Also, in the case at bar, Ms. Norris visited the construction site during the rough construction phase which should have put her on notice that potentially dangerous conditions may exist. Conversely, the maid in Beckman would have no reason to suspect that the roof would not hold her weight, especially since the skylights were completely indistinguishable from the roof. In addition, while Yost would not have had reason to believe that the plywood would break because it is generally a strong material, the landowner in Beckman had reason to know that the glass would not support a person's weight. Lastly, it was not reasonably foreseeable that Ms. Norris would exit her unit through her neighbor's unit. However, in Beckman, it was reasonably foreseeable that the windows would be washed from the outside. We conclude that Beckman does not control here.