RINEHART, GRDN., et al., Appellants,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION et al., Appellees.

[Cite as *Rinehart v. Fed. Natl. Mtge. Assn.* (1993), 91 Ohio App.3d 222.]

Court of Appeals of Ohio,
Montgomery County.

No. 12699.

Decided Oct. 20, 1993.

224

*Wilbur S. Lang,* for appellant Loretta Rinehart.

*Ronald E. Schultz,* for appellant Jo Ann Rinehart.

*Marilyn R. Donoff,* for Ohio Department of Human Services.

*Neil F. Freund* and *John G. Witherspoon, Jr.,* for appellee Federal National Mortgage Association.

*Robert P. Bartlett, Jr., Robert F. Cowdrey* and *Christopher F. Johnson,* for appellee Interstate Mortgage Company.

*Dianne F. Marx,* for appellee Ed Hollo Mortgage Services.

———

GRADY, Presiding Judge.

This is an appeal from a directed verdict for the defendants in an action for personal injuries arising from an explosion and fire in the garage of a residential property in Dayton in 1985. Two young boys, Danny Hill and John Rinehart, were in the garage at the time. Both were badly burned, and Danny Hill later died of his injuries.

The plaintiffs below were Loretta Rinehart, guardian; Jo Ann Rinehart, individually and as mother and next of friend of John Rinehart; Nancy Hill, administrator of the estate of Daniel Hill; and the state of Ohio Department of Human Services, which seeks compensation for the cost of medical care it provided.

At the time of this tragic event the residential property was unoccupied. Mortgage foreclosure proceedings had placed the property in the possession of the Federal National Mortgage Association ("FNMA"), which was both the mortgagee and purchaser at the foreclosure sale. The action was brought against FNMA, as principal defendant, and against two other defendants that had been engaged by FNMA to manage the property: Interstate Mortgage Corporation ("Interstate") and Ed Hollo Mortgage Services ("Ed Hollo").

The claims concerning Danny Hill were settled prior to trial. Those concerning John Rinehart proceeded to trial on claims of negligence, specific and general public nuisance, negligence *per se,* third-party beneficiary, and willful and wanton misconduct.

The evidence showed that on the date of the accident, September 1, 1985, the residential property at 2354 East Fifth Street, Dayton, had been vacant for some time. The owner and occupant had departed, leaving the property, consisting of a house and a detached garage, to pass to the hands of the mortgagee, FNMA. After it obtained possession, FNMA engaged Interstate and Ed Hollo to secure the property and to act as its local representatives.

The house was closed and boarded up by the defendants. The garage was not similarly secured. Ed Hollo drove several spikes into the hasp of a door jamb to keep the door closed. Apparently, the two boys, or someone else, removed the spikes to permit entry into the garage.

A large pile of mixed trash and debris had accumulated in the garage. The evidence suggests that some was put there by the former occupant, some by persons unknown, and some by the defendants when they emptied the house. The defendants made no effort to inspect the trash pile or to remove it from the garage.

The garage was situated at the rear of the property, on an alleyway. The garage was accessible from the alley. Otherwise, the property was surrounded by a wire fence, which at some places was six feet high.

On the day of the accident Danny Hill went into the garage through its pedestrian door. After a few minutes he lit a cigarette. The flame ignited vapors that had accumulated in the garage from some flammable or combustible liquid there, possibly gasoline or paint thinner. The garage exploded and burned, producing Danny Hill's fatal injuries. John Rinehart was standing in the

open pedestrian door when the explosion occurred. He was injured in the explosion and fire. At the time he was twelve years old.

Evidence was presented concerning the possible source of the explosion and the practices of the defendants in securing and inspecting the property. It could not be determined how long the vapors had built up, but the evidence showed that they probably had accumulated to a combustible level within the time the defendants were in possession of the house and garage. The evidence also showed that the defendants had limited their maintenance efforts to rudimentary work, such as grass cutting, and had made no effort to inspect the garage or its contents. The evidence also showed that young children were sometimes in the alleyway on which the garage sat. However, there was no evidence that children had entered the garage before.

The defendants moved for a directed verdict at the conclusion of the plaintiffs' case. The trial court granted the motion as to all defendants, holding that (1) John Rinehart was a trespasser and that the defendants had breached no duty they owed him at common law, (2) the defendants' possible violation of Dayton city ordinances concerning property maintenance created no right of recovery for the plaintiffs, and (3) contractual requirements among the defendants created no third-party duty to these plaintiffs or any benefit to them. Plaintiffs have filed a timely notice of appeal, and now present a single assignment of error:

"The trial court erred to the prejudice of plaintiffs-appellants, Loretta Rinehart, guardian of the estate of John Thomas Rinehart, a minor, Jo Ann Rinehart, and state of Ohio, Department of Human Services, in granting a directed verdict to defendants-appellees, Federal National Mortgage Association, Interstate Mortgage Company, and Ed Hollo Mortgage Services, at the close of plaintiffs-appellants' case."

Civ.R. 50(A)(4) provides that a trial court *shall* grant a motion for directed verdict if, construing the evidence most strongly in favor of the party against whom the motion is made, the court finds that on any determinative issue reasonable minds could come to but one conclusion on the evidence, which is adverse to such party. The motion creates an issue of law that requires the trial court to determine whether there exists any evidence of substantial probative value in support of the determinative issue or issues concerned in the motion. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935. If there is, the court must accept those issues as proven for purposes of the motion.

App.R. 12(B) governs appellate review of alleged errors of law. It provides:

"When the court of appeals determines that the trial court committed no error prejudicial to the appellant in any of the particulars assigned and argued in the

appellant's brief and that the appellee is entitled to have the judgment or final order of the trial court affirmed as a matter of law, the court of appeals shall enter judgment accordingly. When the court of appeals determines that the trial court committed error prejudicial to the appellant and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered, or remand the cause to the court with instructions to render such judgment or final order. In all other cases where the court of appeals determines that the judgment or final order of the trial court should be modified as a matter of law it shall enter its judgment accordingly."

An exception exists when the appellate court finds prejudicial error in granting a directed verdict to the defendant at the close of the plaintiff's case. Then, it must reverse the judgment and remand the case for further proceedings. *Waller v. Mayfield* (1988), 37 Ohio St.3d 118, 524 N.E.2d 458.

The trial court directed a verdict for the defendants on all claims for relief set out by the plaintiffs: willful and wanton misconduct, negligence *per se*, breach of contractual duty owed to third parties, and public nuisance. On appeal, the plaintiffs have not argued error in respect to the last claim; therefore, we will review the judgment of the trial court for errors of law in the particulars argued in the defendants' briefs: willful and wanton misconduct and negligence *per se*. Actually, both theories are encompassed in a single cause of action: breach of a duty created by law that proximately results in injuries and losses to another.

We find no error prejudicial to the rights of the plaintiffs-appellants on the particulars assigned and argued in their briefs. Therefore, we will affirm the judgment of the trial court. Our reasons are set out below.

■■■ The law imposes a duty on persons to act for the benefit of another when an obligation to act reasonably arises from the relationship between them. That duty is an affirmative duty to exercise ordinary care to avoid injury to another. A failure to discharge that duty is negligence. Injury caused by that breach of duty creates liability in the obligor.

■■■ Every person is charged by law with a duty not to injure others through his willful and wanton misconduct. This duty differs from that concerned in an act of negligence in at least two respects. First, the duty to exercise ordinary care to avoid injury is an affirmative duty, while the duty not to injure another through willful and wanton misconduct is a negative one. Second, whether an act is negligent varies according to the particular standard of conduct required by the surrounding circumstances, but an act that is misconduct of a willful and wanton nature is so by its very nature.

The duty owed by an owner of land to a person who enters upon it depends, in the first instance, on his legal status as an entrant. Ordinarily, a landowner owes no duty to undiscovered trespassers other than to refrain from injuring such trespassers by willful or wanton misconduct. *Elliott v. Nagy* (1986), 22 Ohio St.3d 58, 22 OBR 77, 488 N.E.2d 853. In *Bell v. Dayton* (Dec. 28, 1989), Montgomery App. No. 11049, unreported, 1989 WL 159182, this court stated:

"Willful conduct implies design, set purpose, intention or deliberation. 70 Ohio Jurisprudence 3d (1986), Negligence, Section 33. See, also, *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 246 [31 OBR 449, 450, 510 N.E.2d 386, 388], citing *Denzer v. Terpstra* (1934), 129 Ohio St. 1 [1 O.O. 303, 193 N.E. 647]. Wanton conduct comprehends an entire absence of all care for the safety of others and a complete indifference to the consequences of the allegedly negligent act. 70 Ohio Jurisprudence 3d (1986), Section 34. See, also, *McKinney, supra*, [31 Ohio St.3d] at 246 [31 OBR at 450, 510 N.E.2d at 388]. Negligent conduct and willful conduct are conceptually distinct terms, the latter concept imposing a much higher burden on the plaintiff to show breach of duty than the former concept. 70 Ohio Jurisprudence 3d (1986), Negligence, Section 33." *Id.* at 10–11.

To constitute willful and wanton misconduct, an act must demonstrate a heedless indifference to or disregard for others in circumstances where the probability of harm is great and is known to the actor. *Brooks v. Norfolk & W. Ry. Co.* (1976), 45 Ohio St.2d 34, 74 O.O.2d 53, 340 N.E.2d 392; *Roszman v. Sammett* (1971), 26 Ohio St.2d 94, 55 O.O.2d 165, 269 N.E.2d 420.

One who, without authorization, enters the private premises of another without invitation or inducement, express or implied, but purely for his own purposes or convenience, where no mutuality of interest exists between him and the owner or occupant, is in the legal status of a "trespasser." See *Keesecker v. McKelvey Co.* (1943), 141 Ohio St. 162, 25 O.O. 266, 47 N.E.2d 211.

The trial court held that John Rinehart was in the legal status of a trespasser when he and Danny Hill entered the garage. The evidence bears no different interpretation. The defendants did not invite or induce them to enter. Their entry served no interest of the defendants. The boys entered purely for their own purposes. That they were trespassers is not in dispute.

There is no substantial evidence that John Rinehart and Danny Hill were other than *undiscovered* trespassers. The defendants were unaware of their entry, so there was no actual notice that the boys were there. Even in that circumstance, a landowner may be liable for injuries to a child trespasser if he knew or should have known that children were regularly on the property or that

they have congregated in close proximity to it. See *Wills v. Frank Hoover Supply Co.* (1986), 26 Ohio St.3d 186, 26 OBR 160, 497 N.E.2d 1118; *Soles v. Ohio Edison Co.* (1945), 144 Ohio St. 373, 29 O.O. 559, 59 N.E.2d 138; *Coy v. Columbus, Delaware & Marion Elec. Co.* (1932), 125 Ohio St. 283, 181 N.E. 131; and *Ziehm v. Vale* (1918), 98 Ohio St. 306, 120 N.E. 702. Here, there was evidence that children were in the area, but that fact, standing alone, does not demonstrate that form of constructive notice. There is no evidence from which one might reasonably infer that it was foreseeable that children were likely to enter the garage.

▮ Even when a child enters as an undiscovered trespasser, an owner or occupier of land may be liable for injuries suffered by the child thereon if (1) the child entered at the "sufferance" of the owner or occupier, and (2) the injuries proximately result from a static condition made perilous by the active and negligent operation of the premises by the owner and occupier. *Ziehm v. Vale, supra,* modifying, in part, *Wheeling & Lake Erie RR. Co. v. Harvey* (1907), 77 Ohio St. 235, 83 N.E. 66. The test is conjunctive: both elements are required.

▮ "Sufferance" is a form of passive consent created by an omission or neglect to enforce an adverse right. In this circumstance it imposes on owners and occupiers an obligation with respect to child trespassers that does not exist with respect to adults: a duty to keep the intruder out. The evidence here might indicate such a failure. The only measure taken by the defendants to secure the garage was to wedge several large nails through the door hasp. In contrast, the house was boarded up. Under the standards of Civ.R. 50, reasonable minds could find that the boys entered at the "sufferance" of these defendants.

▮ The evidence does not reasonably support a finding for the plaintiffs on the second prong of the test, however. The injuries to John Rinehart proximately resulted from the ignition of combustible vapors that had accumulated in the garage. While the static condition of the premises was perilous, there is no evidence from which a reasonable mind could find that the perilous condition was caused by the active and negligent operation of the premises by the defendants. The exact origin of the vapors is unknown, though there is evidence that they accumulated to a combustible point while these defendants were in control of the premises. There is evidence that the defendants failed to conduct an inspection, which could have revealed the vapors. However, neither of these facts demonstrates the "active and negligent operation" of the premises that the rule requires.

▮ Lacking evidence of an active negligence, and in view of the legal status of these children as undiscovered trespassers, the defendants are liable in these circumstances only if their acts constituted willful and wanton misconduct.

Defendants were entitled to a directed verdict unless reasonable minds, construing the evidence most strongly against the defendants, could find willful and wanton misconduct.

The acts that may be attributed to these defendants, failure to rid the garage of the dangerous vapors or to warn of their presence, cannot reasonably constitute willful and wanton misconduct. The defendants did not act purposely or intentionally to create the hazard or to fail to mitigate its risks once they knew of it. There is no evidence that they knew of the hazard or that it was reasonably foreseeable to them. They did not inspect the premises, which could have revealed the hazard, but that failure does not demonstrate the entire absence of all care for the safety of others and a complete indifference to the known risks and consequences of their own negligent acts. Indeed, the defendants made some effort to secure the garage against entry, which demonstrates *some* sense of care for the safety of those who might enter. Therefore, their conduct, to the extent that it was a proximate cause of the injuries and losses to the plaintiffs, is not willful and wanton misconduct.

The defendants rely on the recent decision in *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 597 N.E.2d 504, the syllabus of which states:

"An independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property."

In *Simmers,* an independent contractor who was engaged to repair a railroad bridge left a large hole in a pedestrian walkway of the bridge. A fourteen-year-old boy was injured when he fell through as he crossed the bridge. The Supreme Court held that the contractor's liability must be determined by ordinary rules of negligence, not those pertaining to landowners, because the contractor had no property interest in the premises.

We believe that the rule of *Simmers v. Bentley Constr. Co., supra,* has no application to these facts. FNMA was not an independent contractor. It had purchased the property in a foreclosure sale. It was the landowner. The other defendants were not owners, but there is no evidence that they created the dangerous condition from which these injuries proximately resulted.

The plaintiffs also argue that the defendants' violation of two Dayton city ordinances creates liability. R.C.G.O. 93.331 generally requires owners of unoccupied structures to keep them in a safe condition and secure from entry by others. R.C.G.O. 152 declares a premises that constitutes a fire hazard to be a public nuisance, which an owner is required to abate on proper order.

There is no evidence that a nuisance abatement order was issued concerning this garage. Even if there was such evidence, and even in view of the possible violation of R.C.G.O. 93.331, that evidence is insufficient to demonstrate liability here.

Violation of a statute or ordinance that imposes a specific duty to act for the benefit of another constitutes negligence *per se* when it results in injury. The obligor will be held liable when his failure to comply proximately results in injuries to a person whom the statute or ordinance was intended to protect. *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440. However, that breach is only of the actor's affirmative duty of ordinary care. The violation of a statute or ordinance does not constitute willful or wanton misconduct. *Higbee Co. v. Jackson* (1921), 101 Ohio St. 75, 128 N.E. 61. As liability for injuries to an undiscovered trespasser requires a breach of the duty to refrain from willful and wanton acts, liability is not demonstrated by the violation of a statute or ordinance.

Plaintiffs also argue that the defendants' negligence is demonstrated by their failure to comply with the property maintenance provisions of their own agreements. It may, but such failures create no liability to third persons injured as a result when the agreement or rules benefit them only incidentally. *Hines v. Amole* (1982), 4 Ohio App.3d 263, 4 OBR 480, 448 N.E.2d 473. More important, liability in this instance requires willful and wanton misconduct, not mere negligence.

On the foregoing analysis we find no error prejudicial to the plaintiffs in the particulars alleged in their briefs. Their assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., concur separately.

WOLFF, Judge, concurring.

Although I agree with the majority opinion in most respects, I believe that R.C.G.O. 93.331, discussed at 231–232, 632 N.E.2d at 545 of the majority opinion, does not create a duty of care to trespassers. As such, the defendants could not have been negligent as to John Rinehart, even if they were shown to have violated R.C.G.O. 93.331. Assuming *arguendo* that R.C.G.O. 93.331 creates a duty of care toward trespassers, the trespasser should be able to recover upon a showing of negligence proximately resulting in injury to him, and he should not be required to demonstrate wanton and willful misconduct. I do not think we should rely on John Rinehart's failure to establish wanton and willful conduct to

dispose of his claim based on R.C.G.O. 93.331. Rather, I believe we should say that R.C.G.O. 99.331 created no duty of care on the part of the defendants to him.

YOUNG, J., joins in the foregoing concurring opinion.