DECISION AND JOURNAL ENTRY
Appellants, Wilbur Fath, Joshua McPeck and his mother Monica Flaherty, and Kevin Terazzi and his parents Susan and Donald Terazzi, appeal from two orders granting summary judgment to three of the defendants in their personal injury action. This Court affirms.
On February 25, 1996, Fath was driving his small, two-wheel drive pickup truck in which his friends McPeck, Terazzi, and Shannon Willette[1] were passengers. Fath drove to a large parcel of private property in Tuscarawas County, Ohio, where he had driven his truck with some other friends approximately one month earlier. The group had parked on a hill and drank beer. Fath and his friends often chose such secluded areas so that they would not be "hassled." This particular property was strip-mined farmland on which an oil and gas well was located.
When Fath reached the property, he turned off Township Road 312 onto a gravel road. Fath was aware that he had driven onto private property and that he did not have permission to be there. After reaching the end of the gravel portion of road, Fath continued forward on a grassy path that wound around a hill on the property, attempting to go to the spot where he and his friends had parked the last time he was there. Fath had trouble driving up the inclined path because the grass was wet. Consequently, he turned his truck around and started to drive back down the hill. As he descended the path, his rear wheels got stuck in a muddy rut. Fath did not exit his vehicle but instead attempted to get his truck out of the rut by rocking the truck back and forth. He was able to get the wheels out of the rut, but the truck then slid uncontrollably off the path and down the hill. The truck collided with an oil and gas wellhead, causing a fire and an explosion. The plaintiffs all sustained injuries.
The plaintiffs filed this action[2] against numerous defendants including the three appellees in this appeal: Mutual Oil Gas Company, the owners of the oil and gas well; JJ Contracting, the owners of the one-hundred-acre piece of property on which the gravel road, grassy path and oil and gas well were situated; and JD Mining, Inc., a strip-mining company that had constructed and maintained both the gravel road and the grassy path. The plaintiffs alleged that their injuries had been caused by the negligence or willful and wanton misconduct of the defendants.
The appellees separately moved for summary judgment. Through separate entries, the trial court granted summary judgment to all three appellees. By the time the trial court granted summary judgment to the last of the appellees, all other defendants in this case had been either dismissed or granted summary judgment. The plaintiffs timely appealed the orders granting summary judgment to these three appellees only.
Although Fath appealed separately from the other plaintiffs, the appeals were consolidated. The plaintiffs filed two separate briefs, assigning different errors. Because each brief challenges the propriety of summary judgment and the interests of all the plaintiffs are essentially the same, this Court will consolidate all assigned errors as an overall challenge to summary judgment for each of the appellees.
Pursuant to Civ.R. 56(C), summary judgment is proper if:
 (1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.
 State ex. rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589. Doubts must be resolved in favor of the nonmoving party. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,686.
Through their motions for summary judgment, each of the appellees contended, among other things, that the plaintiffs were undiscovered trespassers, to whom they owed a duty only to refrain from willful and wanton misconduct, and that there was no evidence of any willful or wanton misconduct on their part. Each appellee pointed to supporting evidence in the record that the plaintiffs were admittedly on the property without any permission to be there, that the appellees did not know the plaintiffs were on the property until after they learned of the accident, that the appellees had little or no notice of any prior trespasses on the property, and that Fath himself conceded that he had parked with friends on the property before and that he returned there because he believed his presence would not be detected by anyone.
The plaintiffs responded in opposition to summary judgment, contending that the appellees owed them a duty of ordinary care because the plaintiffs were discovered trespassers. The plaintiffs pointed to evidence that trespassers had been discovered on the premises in the past. The plaintiffs further maintained that Mutual Oil Gas Company, as the owner of the oil and gas well, was required by the Ohio Administrative Code to "use all reasonable means to safeguard against hazards to life, limb and property[.]" Ohio Adm. Code 1501:9-9-02. The plaintiffs further asserted that the appellees had acted in a willful and wanton manner.
 Plaintiffs' Status as Trespassers
The duty owed by the appellees to the plaintiffs was dependent upon the status of the plaintiffs on the property. SeeGladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 315. It was not disputed that the plaintiffs were trespassing on the property at the time of their accident. The parties disputed, however, whether the plaintiffs were discovered or undiscovered trespassers, for a landowner's duty is affected by that distinction. To an undiscovered trespasser, the only duty owed is to refrain from willful and wanton misconduct. Phillipsv. Dayton Power Light Co. (1994), 93 Ohio App.3d 111, 116-117. A higher duty, one of ordinary care, is owed to a "discovered" trespasser. Id.
Through their review of the "discovered trespasser" cases, the plaintiffs have suggested that all that is required to elevate one's status from undiscovered trespasser to discovered trespasser is notice by the landowner of past instances of trespassing somewhere on his property. While notice of prior trespasses is required to elevate the landowner's duty to a trespasser, that factor standing alone is not enough. According to 2 Restatement of the Law 2d, Torts (1965), 184-207, Sections 333 to 339, a trespasser's status can be elevated to that of "discovered" trespasser in situations involving the following facts: (1) constant trespassers and a latent active or artificial danger, (2) known trespassers, and (3) trespassing children.
 Constant Trespassers and a Latent Active or Artificial Danger
A landowner will owe a duty of ordinary care when he knows or has reason to know that trespassers "constantly" intrude upon a limited area of the property where the owner either carries on a dangerous activity or has created or maintained an artificial condition that he has reason to know is dangerous and that the danger will not be discovered or appreciated by the intruders.Id. at 185-189, Sections 334 and 335; see, also, Wills v. FrankHoover Supply (1986), 26 Ohio St.3d 186, 189-190.
(2) Known Trespassers A landowner owes a duty to "known trespassers" when he knows or has reason to know that a trespasser is currently on his land. The landowner must carry on his activities with due care, or, if he maintains a dangerous artificial condition or has immediate control of a force and knows that the trespasser is in dangerous proximity to it and will not appreciate the risk, he must warn of the danger. 2 Restatement of Torts 2d, supra, at 190-191, 195, 196, Sections 336, 337 and 338; see, also, Gladon, 75 Ohio St.3d at 318 (citing Section 336 with approval, determined that jury must determine whether rapid transit operator should have known of trespasser's presence on track when he observed a tennis shoe); Cole v. New York Cent. RR.Co. (1948), 150 Ohio St. 175 (focused on fact that railroad employee actually saw a nine-year-old trespasser lying unconscious on railroad tracks but did nothing to prevent train from hitting him).
(2) Trespassing Children (Attractive Nuisance Doctrine) The landowner may also owe a duty of due care when he maintains an artificial condition that is dangerous to children and he knows or has reason to know that children are likely to trespass and will not appreciate the danger due to their age. 2 Restatement of Torts 2d, supra, at 197, Section 339; but, see, Elliott v. Nagy (1986),22 Ohio St.3d 58, 61 (refusing to adopt the attractive nuisance doctrine).
The plaintiffs did not allege that any of the appellees actually discovered them on the property or had reason to know that they were there at the time. Instead, they alleged that the appellees should have known that trespassers come onto the property due to prior trespasses on the property. None of the plaintiffs were children. Consequently, neither the known trespasser or attractive nuisance doctrines are applicable to this case. Of the above three types of situations, only the first could arguably apply.
2. Restatement of Torts 2d, supra, at 185-190, Sections 334 and 335, and the Ohio cases that have implicitly applied these sections, have required not only that there be a dangerous activity or artificial condition maintained on the property but also that the landowners or persons in control of the instrumentality have notice of prior trespasses in the immediate vicinity of the danger. See, e.g., Rinehart v. Fed. Natl. Mtge.Assn. (1993), 91 Ohio App.3d 222, 227, 230 (evidence of prior trespasses in the area not enough to establish duty where there was no evidence that trespassers had ever entered the garage where plaintiffs were injured); Phillips, 93 Ohio App.3d at 117-118
(issue of material fact regarding whether a utility company should have known about trespassers on its utility tower where it knew that children or teenagers had climbed its electrical towers including the particular tower at issue and that this tower was in a residential neighborhood with a brick grill and shed next to it); Whitener v. Firwood Invest. Co. (Sept. 13, 1995), Montgomery App. No. 14938, unreported, 1995 Ohio App. LEXIS 3986, at *12 — *15 (jury question on whether plaintiff was a discovered trespasser where owners of apartment complex had notice that trespassers frequently used its swimming pool after its hours of operation).
In the case before us, the property in question is a one-hundred-acre tract, on which is located a gravel road, an oil and gas well, and a grassy path on a hill overlooking the oil and gas well. The plaintiffs presented evidence that JJ Contracting and JD Mining had notice of people trespassing on the property on three occasions between 1993 and 1995.[3] In each case, the trespassers were discovered on or near the gravel portion of the roadway on the property. Aside from these trespasses being infrequent and somewhat remote from the accident in question, none of these prior trespasses was in the immediate vicinity of the grassy path on the hill overlooking the oil and gas wellhead. In fact, the deposition testimony of a representative of both JJ Contracting and JD Mining was that, although he had discovered trespassers on the property in the past, he had never discovered anyone in the area where the plaintiffs were injured, nor had he ever seen a vehicle drive on the grassy path on the hill over the oil gas well. There was no evidence of prior trespasses in the immediate vicinity of the danger alleged by the plaintiffs. Consequently, the plaintiffs failed to raise a genuine issue of aterial fact as to whether they were discovered trespassers.
 Administrative Regulation and Civil Liability
The plaintiffs further contended in opposition to summary judgment that Mutual Oil Gas was required by former Ohio Adm. Code NRo-9-02, now Ohio Adm. Code 1501:9-09-02, to "use all reasonable means to safeguard against hazards to life, limb and property" and that, consequently, any failure to do so subjected it to civil liability to the plaintiffs. Other than the administrative regulation itself, the plaintiffs cite no authority to support this argument or their underlying premise that an administrative or legislative enactment can create a duty of reasonable care where such a duty did not otherwise exist. See 2 Restatement of the Law 2d, Torts (1965) 25, Section 286 andRinehart, 91 Ohio App.3d at 232 (both suggest that a statute or regulation will not elevate defendant's duty to one of ordinary care but can only define omissions that will constitute breach of an already existing duty); see, also, Sikora v. Wenzel (2000),88 Ohio St.3d 493, 496 (statute serves merely "`as a legislative declaration of the standard of care of a reasonably prudent person applicable in negligence actions.' Thus, the `reasonable person standard is supplanted by a standard of care established by the legislature[,]'" quoting 57A American Jurisprudence 2d (1989) 672, Negligence, Section 748).
Moreover, even if a regulation or statute could elevate the duty of care owed by the appellees, no such duty was created by this administrative regulation. For a statute or regulation to define the tort duty owed by a defendant to a plaintiff, the statute must (1) impose a specific duty, (2) for the protection of a particular class of people to which the plaintiff belongs. SeeCuran v. Walsh Jesuit High School (1995), 99 Ohio App.3d 696,700.
The regulation at issue fails to satisfy even the first requirement. For a statute to define one's tort duty, it must prohibit a specific act or impose a requirement of an absolute and specific nature. See Bonds v. Ohio Dept. of Rehab. Corr.
(1996), 116 Ohio App.3d 144, 151 (citing several other cases). Whether a duty is sufficiently specific depends on whether the requirement can be determined without the exercise of human judgment. Zimmerman v. St. Peter's Catholic Church (1993),87 Ohio App.3d 752, 761-762. In Rinehart, supra, at 232-233 (Wolff and Frederick N. Young, JJ., concurring), two members of the court found that the duty owed to an undiscovered trespasser was not defined by an ordinance that required the owner of an unoccupied structure to keep it in a safe condition and secure from entry by others.
Because the administrative regulation broadly required Mutual Oil Gas to "use all reasonable means to safeguard against hazards to life, limb and property," it did not require or prohibit a specific act. It is a broad safety statute, the requirements of which cannot be determined without the exercise of human judgment, and it cannot be the basis of a tort duty.
Moreover, the plaintiffs failed to present any evidence or argument that they belong to the specific class of people that the regulation was designed to protect. Having found no case law or administrative insight on this issue, this Court can only speculate that the class of people intended to be protected by the regulation includes the people lawfully living, working, or conducting other activities near the oil and gas well, not those who choose to trespass near it and drive up a grassy hill overlooking it. Although the regulation may have been enacted to protect the general public, the breach of a duty owed to the public in general cannot form the basis of tort liability.Crawford v. Ohio Div. of Parole Community Serv. (1991), 57 Ohio St.3d 184,192 (Wright, J., dissenting). Consequently, the plaintiffs failed to establish that Mutual Oil Gas owed it any greater duty than to refrain from willful and wanton misconduct.
 Willful and Wanton Misconduct
Consequently, the only duty that any of the appellees owed to the plaintiffs was to refrain from willful and wanton misconduct. Willful or wanton misconduct constitutes "a heedless indifference to or disregard for others in circumstances where the probability of harm is great and is known to the actor." Rinehart, supra, at 229. Wanton misconduct "implies a failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor. * * * Wanton misconduct is positive in nature while mere negligence is naturally negative in character." Peoples v. Willoughby (1990), 70 Ohio App.3d 848, 851, quoting Tighe v. Diamond (1948), 149 Ohio St. 520, 526. Willful misconduct "imports [an even] more positive mental condition[.] * * * [It] implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury.'" Peoples, supra, quoting Tighe, supra, at 526-527.
In support of summary judgment on these claims, the appellees relied on essentially the same evidence that they relied on to support their argument that the plaintiffs were discovered trespassers. The appellees asserted that they clearly did not ignore a known probability of harm to the plaintiffs because they had no reason to anticipate that the plaintiffs would even be on the property, let alone that they would drive up the grassy hill, slide off the hill, and collide with the oil and gas wellhead.
In opposition to summary judgment, the plaintiffs simply pointed to the same evidence that they submitted in their attempt to demonstrate that they were discovered trespassers. As explained above, evidence that some of the appellees had notice of a few prior trespasses but took no steps to warn future trespassers or prevent the danger, did not demonstrate the breach of any duty to the plaintiffs because no duty was owed. Thus, appellees committed no breach of a clear legal duty. Likewise, because the only allegations against the appellees were that they failed to act, the plaintiffs demonstrated no active misconduct or wanton behavior. Consequently, reasonable minds could only conclude that there was no evidence of any willful or wanton misconduct by any of the appellees.
Because the plaintiffs failed to demonstrate that any of the appellees breached any duty to them, summary judgment for the appellees was proper. The plaintiffs' assignments of error are overruled.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
 ___________________________ LYNN C. SLABY
FOR THE COURT, BATCHELDER, P. J., BAIRD, J., CONCUR.
[1] Shannon Willette is not a party to this case.
[2] Although Plaintiff Fath filed a separate action, the cases were later consolidated.
[3] There was also evidence that beer cans had been found on the property, but there was nothing to indicate when those cans were found.