OPINION
{¶ 1} Plaintiffs-appellants, Gloria and Timothy Salmon, appeal the decision of the Butler County Court of Common Pleas granting the joint summary judgment motion of defendants-appellees, Midd Commons, LLC, Perry Thatcher, and Rising Phoenix Theatre Co. We affirm the common pleas court's decision.
 {¶ 2} In June 2002, Gloria Salmon attended a dress rehearsal for a theatre production in which her daughter was performing. The rehearsal took place at the Temple Arts Building in Middletown, where Salmon's daughter had been participating in a children's theatre workshop coordinated by Rising Phoenix. Midd Commons owns the Temple Arts Building while Rising Phoenix occupies the building and uses it as a theatre. Perry Thatcher is the sole shareholder of Midd Commons.
 {¶ 3} The director of the workshop asked Salmon to photograph the children during the dress rehearsal. Upon arriving at the Temple Arts Building, Salmon decided to photograph the children while they were getting their makeup done in the dressing room. The dressing room was located directly above the performance space, accessible by either of two staircases. One staircase led directly to the dressing room from backstage. Another staircase, accessible from a hallway near the restrooms, rose to meet a catwalk leading to the dressing room. According to Salmon, she had seen children using both staircases.
 {¶ 4} Thatcher testified in his deposition that there was a sign on the door leading to the hallway staircase stating, "Authorized Personnel Only." Thatcher further testified that the "attic" area along the catwalk housed the building's heating and air conditioning units, and that access to that area was restricted to maintenance personnel. Additionally, Thatcher stated that the building's rafters hung over the catwalk, requiring anyone over five feet tall to duck. The record shows that Salmon is five feet, two inches tall. Christine Brunner, a Rising Phoenix board member, also testified in her deposition that there was an "Authorized Personnel Only" sign on the door leading to the hallway staircase. According to Salmon, there was not a sign on the door.
 {¶ 5} Salmon opted to use the hallway staircase. In her deposition, she stated that she was about to open the door leading to the staircase when one of the children came out of the door. Salmon then proceeded up the staircase. According to Salmon, the lighting in the stairwell was "dim." She stated that she thought the only lighting was coming from the dressing room across the catwalk. Though the lighting was dim, Salmon stated that she could still see. Therefore, she did not look for a light switch. According to Brunner, there was a light switch inside the stairwell that would have illuminated the stairwell and the catwalk. Salmon continued up the stairs and across the catwalk, arriving in the dressing room. There, Salmon took several photographs of the children.
 {¶ 6} Salmon soon exited the dressing room and began to walk across the catwalk. Again, Salmon did not look for a light switch. According to Brunner, there was another light switch outside the dressing room that would have illuminated the area. As she walked across the catwalk, Salmon stated that she recalled seeing insulation and rafters to her right. She stated that when she had almost reached the top of the stairs, "the floor collapsed," and she fell to the next floor below. Salmon sustained a fractured arm, an injured shoulder, and various bruises and abrasions. Thatcher stated in his deposition that there was an area of insulation beyond the catwalk. Based on their observations of the scene after the accident, Thatcher and Brunner concluded that Salmon stepped off the catwalk and fell through a layer of insulation. They also concluded that Salmon fell because she was in a dark area where only authorized personnel such as maintenance workers were allowed. Salmon stated that she did not remember stepping off the catwalk, and that she would not have done that.
 {¶ 7} Salmon and her husband subsequently filed a complaint in common pleas court against Rising Phoenix, Midd Commons, and Thatcher. They alleged that appellees were negligent in failing to maintain the premises in a safe condition. Salmon's husband asserted a claim for loss of consortium.
 {¶ 8} In August 2005, Rising Phoenix, Midd Commons, and Thatcher jointly moved for summary judgment. The common pleas court granted the motion. The court determined that while Salmon was initially an invitee, her status changed to trespasser when she "ventured through the door into the dimly lighted area." According to the court, Salmon did not have permission to enter that area. The court determined that none of the appellees violated the legal duty they owed Salmon. Specifically, the court found that none of the appellees had engaged in willful or wanton misconduct. Therefore, Salmon's negligence action failed as did her husband's derivative action for loss of consortium.
 {¶ 9} Salmon and her husband now appeal the common pleas court's decision granting summary judgment, assigning one error as follows:
 {¶ 10} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES."
 {¶ 11} In their lone assignment of error, appellants argue that there was a genuine issue of fact as to whether Gloria Salmon was an invitee or a trespasser. Even if the common pleas court was correct in determining that Salmon was a trespasser, appellants argue that there was a genuine issue of fact as to whether Rising Phoenix, Midd Commons, or Thatcher violated the legal duty they owed to her.
 {¶ 12} Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor.Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 369-370, 1998-Ohio-389. We review de novo a lower court's decision granting summary judgment. Grafton v. Ohio Edison Co.,77 Ohio St.3d 102, 105, 1996-Ohio-336.
 {¶ 13} In order to establish a negligence claim, a plaintiff must show the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach. Texler v. D.O.Summers Cleaners Shirt Laundry Co., 81 Ohio St.3d 677, 680, 1998-Ohio-602. With respect to the duty of a property owner or occupier in a premises liability negligence case such as this one, Ohio adheres to the common law classifications of invitee, licensee, and trespasser. Gladon v. Greater Cleveland RegionalTransit Auth., 75 Ohio St.3d 312, 315, 1996-Ohio-137. An invitee is one who enters the premises of another by invitation for some purpose that is beneficial to the owner or occupier. Gladon,75 Ohio St.3d at 315. A licensee is one who enters property with the owner or occupier's permission or acquiescence for purposes beneficial to the licensee and not the owner or occupier.Provencher v. Ohio Dept. of Transp. (1990), 49 Ohio St.3d 265,266. A trespasser is one who enters property without invitation or permission, purely for his or her own purposes or convenience.McKinney v. Hartz Restle Realtors, Inc. (1987),31 Ohio St.3d 244, 246.
 {¶ 14} With respect to an invitee, a property owner or occupier owes a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition. Lightv. Ohio Univ. (1986), 28 Ohio St.3d 66, 68. With respect to a licensee or a trespasser, a property owner or occupier owes no duty except to refrain from willful or wanton misconduct that is likely to injure the licensee or trespasser. Gladon,75 Ohio St.3d at 317. To constitute willful and wanton misconduct, an act must demonstrate heedless indifference to or disregard for others in circumstances where the probability of harm is great and is known to the actor. Combs v. Baker, Butler App. No. CA2001-01-020, 2001-Ohio-8650, 2001 WL 1525324, *3; Rinehart v.Fed. Natl. Mtge. Assn. (1993), 91 Ohio App.3d 222, 229.
 {¶ 15} The rights of an invitee are not absolute, but are limited by the scope of the invitation. Gladon at 315. If an invitee goes beyond the area that is reasonably considered to be part of the invitation, the invitee loses invitee status and becomes either a licensee or a trespasser, depending on whether he or she is there with the permission of the owner or occupier of the property. Id.; Conniff v. Waterland, Inc. (1997),118 Ohio App.3d 647, 651.
 {¶ 16} The undisputed facts in the record indicate that initially Salmon was an invitee with respect to Rising Phoenix. Salmon had been invited onto the premises for a purpose benefiting Rising Phoenix and the children's workshop. Specifically, the director of the workshop had asked Salmon to take photographs of the children during the dress rehearsal. According to Salmon, the director intended to place a picture of the children on the wall of the building. With respect to Midd Commons and Thatcher, Salmon initially was a licensee. She was not on the premises for a purpose benefiting Midd Commons or Thatcher, though it can fairly be said that Midd Commons and Thatcher acquiesced to the presence of individuals such as Salmon when they permitted Rising Phoenix to operate a theatre on the premises.
 {¶ 17} Though Salmon was initially an invitee with respect to Rising Phoenix, the record indicates that she exceeded the scope of her invitation when she decided to go to the dressing room via the hallway stairwell. As previously noted, Salmon stated in her deposition that the director of the workshop asked her to take photographs of the children during the dress rehearsal. However, we cannot reasonably consider the director's invitation as permitting Salmon to venture into the dimly-lighted hallway stairwell, ascend the stairs, and walk across the catwalk amidst the building's rafters and heating and cooling units. Nothing in the record indicates that the director invited Salmon to take pictures in the dressing room or suggested the use of the hallway stairwell and catwalk. Accordingly, Salmon's status with respect to Rising Phoenix changed from invitee to trespasser once she entered that area. Similarly, Salmon's licensee status with respect to Midd Commons and Thatcher changed to trespasser status once she entered the hallway stairwell. The record indicates that Midd Commons and Thatcher viewed the hallway stairwell and catwalk as an area solely for maintenance personnel, and did not acquiesce to the presence of Salmon or similar individuals there.
 {¶ 18} As a trespasser, Rising Phoenix, Midd Commons, and Thatcher owed Salmon a duty to refrain from willful and wanton misconduct. It is apparent from the record that none of the appellees violated that duty. The record is devoid of evidence that Rising Phoenix, Midd Commons, or Thatcher acted with heedless indifference or disregard for Salmon's safety, or that the probability of harm was great. Specifically, we do not find that leaving the door to the hallway stairwell unlocked or failing to warn Salmon of potential hazards along the catwalk rose to the level of "willful or wanton misconduct."
 {¶ 19} Additionally, we find this case comparable to a "step-in-the-dark" case. See, e.g., Stazione v. Lakefront Lines,Inc., Cuyahoga App. No. 83110, 2004-Ohio-141, ¶ 14- ¶ 18 (summary judgment to defendant is proper where undisputed facts show that plaintiff's "step in the dark" made plaintiff more than 50 percent negligent in causing accident). As previously noted, Salmon stated that the lighting in the stairwell was "dim." Further, she stated that she thought the only light in the area was coming from the dressing room, located across the catwalk. Therefore, when she left the dressing room and walked across the catwalk toward the stairwell, the only light in the area was behind her, leaving insufficient light in front of her. The record shows that she could have reached for a light switch upon entering the stairwell or upon exiting the dressing room, but did not. The record also shows that the backstage stairwell was an alternative, well-lighted route that she could have taken. It is apparent from the record that the accident occurred primarily as a result of Salmon's decision to proceed across the catwalk in a poorly-lighted area, rather than as a result of negligence on the part of Rising Phoenix, Midd Commons, or Thatcher. A reasonable trier of fact could not conclude otherwise.
 {¶ 20} Based on the foregoing analysis, we overrule Salmon's sole assignment of error. There were no genuine issues of material fact, and reasonable minds could only come to the conclusion that Rising Phoenix, Midd Commons, and Thatcher were entitled to judgment as a matter of law. Accordingly, we affirm the judgment of the common pleas court.
Walsh and Bressler, JJ., concur.